*In the Matter of AutoFlex Fleet, Inc.*, No. 0539, September Term 2022. Opinion by Zic, J.

**JUDICIAL REVIEW OF ADMINISTRATIVE DECISIONS – JUDICIAL NOTICE OF ADJUDICATIVE FACTS BY THE CIRCUIT COURT**

A court reviewing an administrative decision does not abuse its discretion in taking judicial notice, then remanding, when the adjudicative facts concern events that occurred after the agency issues its decision. Under Md. Rule 7-208(c), a circuit court may consider evidence outside the administrative record only in instances "permitted by law." The judicial notice provisions in Md. Rule 5-201 supplies permission because it allows a court to consider adjudicative facts outside an existing record "at any stage of the proceeding," and a court "shall" do so when "requested" by a party and "supplied" with the "necessary information."

Here, the circuit court erred by not taking judicial notice after determining that the evidence was neither relevant to the case nor "generally known." Under Md. Rule 5-201, judicial notice is mandatory when a requesting party supplies the court with "the necessary information." The circuit court should have taken judicial notice because AutoFlex requested judicial notice of facts relevant to AutoFlex's challenges to the procurement process, AutoFlex provided the court with the relevant information, and the Local Board did not dispute the request.

**JUDICIAL NOTICE OF ADJUDICATIVE FACTS – COURT PROCEEDINGS**

Under *Dashiell v. Meeks,* 396 Md. 149, 176 (2006), courts may take judicial notice of another case's court proceedings "in order to reach a just result[.]" This Court, therefore, takes judicial notice of the guilty pleas and proffers that are undisputed adjudicated facts which are *prima facie* relevant to the instant case.

**JUDICIAL REVIEW – REMAND – MARYLAND STATE BOARD OF EDUCATION PROCUREMENT CONTRACT**

Two government officials employed by the Montgomery County Public School System ("MCPS") were in a position to influence the instant procurement process at issue as two out of four evaluators. Both of these individuals deliberately circumvented MCPS protocols, received criminal convictions related to their government positions, conducted a long-running theft-scheme, and had an "off-the-books" relationship with an entity undisputedly affiliated with the bidder who received the contract award at issue. Because this evidence could impact a factfinder's view of AutoFlex's claims that MCPS showed favoritism, made material mistakes, and that an appearance of impropriety existed in evaluating the contract proposals during the procurement process, we remand to the Maryland State Board of Education with instructions to remand to the Montgomery County Board of Education for administrative review.

Circuit Court for Montgomery County
Case No.: 486843V

IN THE APPELLATE COURT

OF MARYLAND

No. 0539

September Term, 2022

_____

IN THE MATTER OF AUTOFLEX FLEET, INC.

_____

Friedman,
Zic,
Battaglia, Lynne A.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Zic, J.

_____

Filed: March 5, 2024

* Tang, Rosalyn, J. did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

AutoFlex, Inc. (doing business as AutoFlex Fleet, Inc.) challenges the award to a competing bidder of a $168 million contract (the "Contract") to develop and implement "a turnkey bus electrification program and all associated operational infrastructure and requirements, at or near budget neutral to Montgomery County Public Schools (MCPS) Department of Transportation (DOT)" over a 12-year period, beginning in 2022. After procurement proceedings, MCPS awarded the Contract to a newly created affiliate of Highland Electric Trucking ("HET"), which shared the address of MCPS's existing diesel bus vendor, American Truck & Bus ("ATB"). The Contract was affirmed, first by the Montgomery County Board of Education (the "Local Board"), and then by the Maryland State Board of Education (the "MSBE" or "State Board").

In August 2021, AutoFlex petitioned for judicial review in the Circuit Court for Montgomery County, alleging that MCPS showed favoritism toward HET throughout the procurement proceedings and made material errors in evaluating and selecting HET from among the four responding proposals. During that review proceeding, AutoFlex asked the court to take judicial notice of news reports on November 16, 2021 that MCPS had publicly announced that the Director and Assistant Director of MCPS's Department of Transportation, who managed the bus electrification procurement proceedings and evaluated all proposals, had been suspended pending referrals for criminal investigation of financial improprieties involving an unidentified MCPS vendor.

The circuit court denied AutoFlex's request for judicial notice of the announced suspensions and criminal investigation, then affirmed the decision to award the Contract

to HET. AutoFlex noted this timely appeal, challenging both the circuit court's judicial notice ruling and the underlying administrative decision.

While this appeal was pending, these suspensions and the investigation ripened into guilty pleas to criminal charges arising from a long-term theft scheme in which DOT Director Todd Watkins and Assistant Director Charles Ewald deliberately violated MCPS financial and procurement protocols, which in turn enabled Mr. Ewald to steal hundreds of thousands of dollars. See *infra*, Part I. AutoFlex now asks this Court to take judicial notice that, according to the written proffer supporting Mr. Ewald's guilty pleas (the "Ewald Proffer"), after Mr. Watkins arranged for ATB to hold reimbursements due to MCPS in an "off-the-books account[,]" Mr. Ewald exploited his relationship with ATB and its president to misdirect payments from that account to himself.

Citing those adjudicated facts and undisputed evidence that Mr. Ewald and Mr. Watkins were integrally involved in the procurement process resulting in MCPS selecting an apparent affiliate of the exploited bus vendor as the winning bidder on the electric bus contract, AutoFlex contends that the supplemented record supports its claims of favoritism and material mistakes in evaluating the proposals and also establishes an appearance of impropriety that violates MCPS contracting requirements. In light of such evidence and errors, AutoFlex asks us to vacate the judgment, enjoin the HET Contract, and remand to the "Local Board and MCPS for further proceedings."

We hold that the circuit court erred in denying AutoFlex's request for judicial notice on the ground that, in deciding whether to remand, the court lacked authority to consider evidence that was not in the record presented to the Local Board and MSBE.

2

*See* Md. Code Ann., State Gov't ("SG") § 10-222(h)(1); Md. Rule 5-201(d); Md. Rule 7-208(c).  In addition, the court erred in concluding there was insufficient evidence to establish either the suspensions pending criminal investigation for financial misconduct involving an MCPS vendor or an appearance of impropriety based on them.  To the contrary, the suspensions were undisputed, having been publicly announced by MCPS itself.  Moreover, they were *prima facie* relevant to AutoFlex's claims that MCPS acted with improper favoritism and made material mistakes in the procurement proceedings through which HET was selected as the winning bidder.

Yet we do not rely on the circuit court's legal error in refusing to consider evidence of these suspensions because we will grant AutoFlex's request for judicial notice of Mr. Ewald's subsequent guilty pleas and the supporting proffer filed in the Circuit Court for Montgomery County on May 18, 2023.  *See* Md. Rule 5-201(d)-(f).  These stipulated and finally-adjudicated facts effectively supersede the previously proffered announcement that MCPS suspended Mr. Watkins and Mr. Ewald pending criminal investigation into vendor-related financial misconduct.  *See* Md. Rule 5-201(c).  In addition, under these unusual circumstances, we will take judicial notice on our own initiative of the guilty plea subsequently entered by Mr. Watkins on June 30, 2023, and the supporting proffer in that case (the "Watkins Proffer").  *See* Md. Rule 5-201(f).

As MCPS acknowledged when publicly announcing the suspensions and investigation of its top managers in the DOT, review of such finally-adjudicated facts will help in understanding whether and how their misconduct in office affected MCPS's procurement proceedings, and then to determine appropriate next steps based upon such

findings. Because the decision to affirm the Contract may be impacted by the adjudicated facts establishing that two DOT officials who were integrally involved in managing MCPS's procurement proceedings, including evaluating and scoring all four proposals, then recommending the Contract be awarded to an affiliate of the vendor they were exploiting, we will remand for further administrative review of AutoFlex's challenges. *See* SG § 10-222(h)(1); Md. Code Regs. ("COMAR") 13.A.01.05.06.C. On remand, the MSBE and the Local Board may consider whether Mr. Ewald or Mr. Watkins materially manipulated MCPS's procurement proceedings, as AutoFlex suggests, in applying selection criteria, failing to disclose or consider AutoFlex's status as a minority contractor, mistakenly evaluating pricing terms in the proposals, or otherwise asserting pretextual reasons for selecting HET as the winning bidder.

## BACKGROUND

To facilitate review in this Court and after remand, we summarize the proceedings and pleadings here, then append a timeline of relevant events.

*The Procurement Proceedings*

MCPS's Request for Proposal #9462.1 (the "RFP"), issued on August 31, 2020, sought "responses from responsible companies who have the experience, capability, equipment and services necessary to provide a turnkey budget neutral school bus electrification program for . . . the diesel school bus fleet[,]" by October 6, 2020. The RFP identified Mr. Ewald as "[t]he MCPS project contact[.]" On September 22, 2020, MCPS responded in writing to 26 questions from bidders, issuing a notice and erratum addendum to the RFP.

4

In response to the RFP, AutoFlex and three others submitted proposals for the electrification of MCPS's bus program. These were reviewed and scored by MCPS's "review committee," which AutoFlex later discovered was comprised of four MCPS officials, including Mr. Watkins and Mr. Ewald.[1] During an informal "debrief" with MCPS officials, AutoFlex learned that its proposal received the lowest score among the four bidders.

*Procurement Roles of Ewald and Watkins*

Mr. Ewald and Mr. Watkins played significant roles in the procurement proceedings resulting in the award to HET. The RFP identified Mr. Ewald as the Project Contact. Mr. Ewald and Mr. Watkins served as two of the four evaluators of those proposals.

As the Ewald and Watkins Proffers detailed below establish, both public officials had extensive dealings with ATB, while managing the DOT's diesel bus fleet operations under ATB's long-term contract with MCPS. In turn, their official misconduct in those

---

[1] In its brief to this Court, AutoFlex proffers:

> In documents provided to AutoFlex by MCPS under the Maryland Public Information Act (MPIA), the identity of the evaluators was initially redacted. But based on more recent responses to a third party's request under the MPIA, which were not similarly redacted, AutoFlex learned that one of the evaluators of proposals was Watkins. . . . The record submitted to the Circuit Court demonstrated, and the Court acknowledged, that Watkins and Ewald were two of four evaluators. []

(Citations to the record omitted).

dealings, ranging from deliberate disregard of MCPS procurement and financial protocols, to theft by fraud, created incentives to favor an ATB-affiliate in the procurement process for the electric bus program.

Both Mr. Watkins and Mr. Ewald noted with approval proposals that included information from ATB. Both gave their highest scores to ATB-affiliate HET, with Mr. Watkins awarding a 79 out of 100 points, which was 39 points higher than his score for AutoFlex, based on sparse and generalized comments, including that "HET seems able to meet the timeline of first deployment next summer," when, according to AutoFlex, "Watkins had no way to know whether it would, and in fact it did not[.]" For the HET proposal, Mr. Watkins noted: "Very good proposal. Uses Thomas Built Buses." According to Mr. Watkins, HET's "[r]esponse demonstrates considerable understanding of the turn-key and budget neutral requirements" and offered a "[p]lan for vehicles, deployment schedule, construction plan, and all-inclusive pricing" to "make this a very feasible proposal." Although HET had only "deployed to one small school district" and listed "[o]nly one reference," Mr. Watkins noted that its "[t]eam of subcontractors and financial backers seem very qualified" and its "[s]ubcontractors and Duke Energy have reliable references."

Mr. Watkins gave AutoFlex a score of 30 points, in contrast to the 70 points he scored HET, on the "Capability" factors (encompassing: "Completeness of Response," "Related Past Experience and Qualifications," "Contractor's understanding of the scope of services as demonstrated by the response to meet MCPS's requirements," "Reasonableness and feasibility of the Contractor's proposed detailed work plan and

6

implementation schedule," and "Availability of Contractor's professional staff to meet timeline for contract execution" which counted for 80% of the total score). Mr. Watkins noted:

- AutoFlex's "[r]esponse is incomplete."
- AutoFlex had "[n]o experience in school bus[es,] but [s]ignificant experience in general fleet."
- AutoFlex's "rollout plan" was "[c]onfusing[,]" indicating "limited understanding of needs of district."
- AutoFlex's "[i]mplementation schedule, except for first year, is very hard to follow. Plan lacks detail" and that the "[p]roposal showed adherence to year one timeline, but not sure beyond that."
- With respect to proposed pricing, worth 10% of the score, Mr. Watkins gave AutoFlex a zero, noting that its "[p]ricing plan seems considerably expensive."

In his November 12, 2020 evaluations, Mr. Ewald scored HET's proposal an 87, which was 16 points higher than his score for AutoFlex, basing the difference on a slightly higher capability score but significantly higher scores for company references and proposed pricing. In attached comments, Mr. Ewald cited HET's "very comprehensive response" featuring "engineering site plans," "onsite solar design," and "vehicle specifications –Thomas C2." With respect to "Contractor's understanding of the scope of services," Mr. Ewald noted that "HET provided responses to each item." He identified the "Cost" as $38,500 for year one with "2% escalator, 12 years." For AutoFlex (identified as "Auto-Fleet"), Mr. Ewald noted the "[c]omprehensive response" including "partner information from" identified suppliers including Lion Bus, Thomas Built Buses, and American Bus. Although AutoFlex had no references from "school districts," Mr. Ewald noted its "MD Transit Authority" reference. For the "scope of

7

services" factor, Mr. Ewald apparently copied by mistake the same note he made on HET's evaluation. He wrote "HET provided responses to each item." He criticized AutoFlex's "5 year plan" as "[n]ot very detailed" with no "information on project team." He projected monthly and annual costs for Thomas and Lion buses, plus Level 3 chargers, using question marks for annual figures for the buses above $44,000 and for the charger above $20,000.

On February 23, 2021, MCPS's Superintendent of Schools advised that DOT Director Watkins "report[ed] learning at several national meetings that the three major American school bus manufacturers expect that within 5 to 10 years, all orders for new school buses will be for electric buses" and that "this shift to electric school buses will cause the cost of the new technology to significantly decrease over time." According to Superintendent Jack R. Smith,

> Highland Electric Transportation, Inc., Hamilton, Massachusetts, was the offeror selected following the Request for Proposals evaluation process. A contract has been negotiated and is recommended for approval with HET MCPS, LLC, a wholly owned subsidiary created by Highland Electric Transportation, Inc., specifically for this project. Budget neutrality is possible over time because this vendor will invest in the otherwise high up-front costs of purchasing electric school buses with the plan to recoup that investment over time through decreasing vehicle prices, less expensive fuel (electric vs. diesel), and maintenance savings. MCPS will continue to spend what otherwise would be spent purchasing, operating, fueling, and maintaining equivalent diesel school buses until the investment is recouped. Then MCPS will spend less than what otherwise would be spent on equivalent diesel buses. As far as MCPS and the vendor know, this is the first budget neutral, non-grant dependent, school bus fleet electrification plan available. This is the

8

leading edge of the trend that is expected to sweep through the school bus industry.

In a memorandum dated February 23, 2021, accompanied by a proposed resolution, MCPS's Superintendent recommended that, after "[a]ll proposals were reviewed by the Request for Proposals review committee in accordance with Montgomery County Public Schools standard procurement procedures[,]" the Local Board should approve the contract negotiated with HET MCPS, LLC, for "an initial four-year contract . . . for 326 electric school buses and all associated charging infrastructure, charge management, electric, and maintenance expenses, with a Fiscal Year 2022 cost of $1,312,500." Over "the total lifetime contract" of 12 years "for the 326 buses[,]" the MCPS Superintendent advised the Local Board that the "contract cost . . . is $168,684,990, which is projected to be recovered through funds that otherwise would have been spent on diesel school bus purchases and operations[.]"

*AutoFlex's Appeal to the MSBE*

AutoFlex noted a timely appeal from the Local Board to the MSBE. In support, it pointed out that among the pertinent policies of the Local Board is the following written statement in MCPS's "Procurement Manual" regarding the appearance of impropriety:

> Public purchasing embraces a fundamental obligation to the general public to ensure the procurement is accomplished in accordance with the intent of the laws enacted by the appropriate legislative body. Therefore, all MCPS procurement procedures are conducted in a fair and impartial manner, with avoidance or appearance of impropriety.
>
> -All qualified vendors have access to public business
>
> -No offeror is excluded arbitrarily or capriciously

9

-Competition is sought to the maximum degree feasible

-Specifications are designed to reflect procurement needs of
 the purchasing body rather than to favor a particular
 vendor[]

In addition, AutoFlex presented the following reasons that the Contract should not

be affirmed.

1. **"CERTIFIED MFD":**[2]  Although AutoFlex "is a Maryland-based MDOT
   certified minority business enterprise and a VA verified service-disabled
   veteran-owned small business[,]" as "clearly stated in the proposal[,] . . . MCPS
   ignored the fact of [AutoFlex's] status as an MFD and awarded no points as
   required."  Instead, according to "the Bid Activity Report dated February 23,
   2021, the Board was incorrectly informed that no MFD bid had been received."

2. **"LOWEST BID":**  AutoFlex complained that "the lack of scoring information
   provided during the MCPS debrief" prompted it to file "a protest to request the
   evaluation and scoring that determined the lowest-price bidder."  Based on the
   Contract price for 326 buses, AutoFlex argued, the HET proposal "equals
   $517,438.62 per each OEM Thomas Built bus, an amount significantly higher
   than [AutoFlex] offered for the same products and services in the line items
   contained in its proposal."  In support, AutoFlex pointed out that "over the past
   twelve years," ATB had the "approximately $200 Million Dollars in contracts
   to purchase diesel school buses" and that "[t]he HET MCPS award is based on
   performance by its designated subcontractors, (OEM Thomas-Built, American
   Truck and Bus Dealer, and OEM Proterra Charging infrastructure)," which
   would provide only "high-voltage Level-3 DC capable buses and equipment
   which are significantly more expensive to install at all five of the MCPS School
   Bus Depot Locations."  According to AutoFlex, its proposal featured line items,
   pricing options, and both Thomas Built and Lion Bus alternatives, all of which
   were lower priced options than HET proposed when compared on a line-item
   basis over the full Contract period.  To the extent that MCPS made mistakes in
   comparing AutoFlex's pricing to HET's proposal, those errors reflect the
   admitted failure of DOT officials to "seek State technical assistance" when
   evaluating proposals featuring, for the first time, both fixed price and leasing
   alternatives for electric vehicles.  AutoFlex objected that the low scoring of
   AutoFlex's proposal was "improper" and "not in compliance with State Law."

---

[2] "MFD" stands for a "Minority/Female/Disabled" business proposal.

3. **"FAVORITISM":** AutoFlex objected to the award of "this contract to an entity that did not exist on the MCPS RFP due date of October 6, 2020, did not submit a proposal because it did not yet exist and, coincidentally, has as the address of its registered agent, the same address as the American Truck and Bus dealership that has been providing diesel buses to MCPS for the past twelve years." According to AutoFlex, "public records" show "'that HET MCPS, LLC' is listed at the same address as both American Truck and Bus dealership and Thomas Built in Annapolis[]" which held the existing diesel bus contract with MCPS. Moreover, just one day after being awarded this Contract, HET was awarded a State of Maryland grant of $817,000 toward new electric buses. Citing concerns about these known links among ATB, HET, MCPS, and the State grants, AutoFlex complained "that favoritism was given to Highland and the HET MCPS it formed . . . on January 8, 2021."

   Additional indicia of favoritism, AutoFlex says, arises from MCPS's acceptance of HET's proposal "to deploy only 86 Thomas Built Level-3 DC Electric Buses" during the 2022 and 2023 school years, even though "MCPS has historically deployed 120 diesel buses each fiscal year[.]" In AutoFlex's view, there was a significant gap between what and when HET would be required to deliver under this Contract and what would be required to comply with the RFP criteria that any proposal would have to become "'Budget Neutral.'" Because under HET's proposal, "only 86 of the budgeted 240 diesel buses will be replaced" with electric buses within the first years of the Contract period, that would mean that 154 diesel buses would "not be replaced in accordance with the MCPS DOT's 12-year life cycle replacement policy" and "will require additional repairs, maintenance, and the much more expensive diesel fuel." In comparison, AutoFlex argues that its "proposal offered a transition from 240 diesel buses to 240 electric buses over the next two fiscal years[,]" achieving "budget neutrality . . . as well as significant savings in repair, maintenance, and fuel costs." Moreover, AutoFlex's proposal "offered Level-2 AC and Level-3 DC electric buses that could have been delivered with Vehicle-to-Grid (V2G) bidirectional capabilities in the initial two fiscal years" whereas "MCPS negotiated" with HET "for only 86 high voltage buses – not currently available with V2G utility experience in the Jouley Thomas Built model, as was an MCPS RFP 'Budget Neutral' requirement."

4. **"PROTEST":** When AutoFlex filed a pre-Contract protest, it learned of "the determining factors" and "concerns" that "could have been answered or clarified if MCPS had simply called [AutoFlex] to ask[,]" but "MCPS procurement officials never called or asked . . . any question during the RFP evaluations and scoring process." Moreover, during a telephone debrief requested by AutoFlex, "Todd Watkins stated that he did not have any previous

11

experience in evaluation of Line Itemed, Firm Fixed Leasing" like the proposal submitted by AutoFlex.

5. **"COMAR 11.19.02"/LION BUS COMPLIANCE:** AutoFlex challenged MCPS's assessment that its proposal for a Lion bus model did not meet its "burden of proving the composite exterior as strong as steel[,]" arguing that "MCPS DOT's evaluation and scoring of Lion bus's composite exterior was . . . simply incorrect as a matter of fact." According to AutoFlex, the composite, non-steel Lion bus model did comply with this strength requirement, as confirmed by the Director of the United States Department of Transportation, FMVSS Office of Vehicle Safety Compliance. Moreover, MCPS "simply ignored" that AutoFlex included a Lion bus model "offered in . . . steel" and that its Thomas Built bus alternative was "the same . . . as the [HET] proposal but at a lower price." Nor should there be any penalty against AutoFlex for including such an option in its proposal, given that it was heeding MCPS's express statement that even though there was not yet "an electric version of . . . current conventional Type A bus, used primarily for special education," MCPS expected such buses "to be included in this project when a suitable platform becomes available."

*MSBE Decision*

On July 28, 2021, the MSBE, unaware of the official misconduct by Mr. Ewald and Mr. Watkins, issued its decision affirming the HET Contract. *See* MSBE Opinion No. 21-40. In pertinent part, the MSBE found that among the four bidders, MCPS's "evaluation team ranked HET as first choice and [AutoFlex] as last choice[,]" based on the criteria specified in the RFP, including "Completeness of Response," "Related past experience and qualifications," "Contractor's understanding of the scope of services as demonstrated by response to meet MCPS requirements," "feasibility of the Contractor's proposed detailed work plan and implementation schedule" and "Cost."[3]

---

[3] Although neither the MSBE nor the Local Board have challenged AutoFlex's standing to challenge the award to HET, we note that under the statutory and regulatory framework that governs other categories of state procurements at the Maryland State Board of Contract Appeals ("MSBCA"), a disappointed bid protestor is not an interested

(continued)

The MSBE detailed AutoFlex's numerous challenges following MCPS's announcement in December 2020 that it selected HET's proposal. On December 14, 2020, MCPS advised AutoFlex of the following in a pre-award "debrief meeting":

- Overall technical scoring ranked [AutoFlex] fourth out of four responses
- Apparent experience with general fleet not school buses
- Several details not included such as details regarding bus parking at schools
- No implementation timeline
- The infrastructure plan or bus layout not detailed for any of the depots
- Difficult to determine how program would be budget neutral based on proposed pricing
- Did not discuss alternate methods of charging
- Proposed a bus (Lion bus) that is not authorized in MD

party with standing to challenge such an award unless that party can establish that if the protest were sustained, it would "be in line for [the] award." *Montgomery Park, LLC v. Maryland Dep't of Gen. Servs.*, 482 Md. 706, 731 (2023) (cleaned up). *Cf.* COMAR 21.10.02.01.B.(1) (defining "[i]nterested party" as "an actual or prospective bidder, . . . that may be aggrieved by the solicitation or award of a contract"); COMAR 21.10.02.01.B.(3) (defining "[p]rotestor" as "any actual . . . bidder, . . . who is aggrieved in connection with the solicitation or the award of a contract and who files the protest"); COMAR 21.10.02.02.A. ("An interested party may protest . . . against the award or the proposed award of a contract subject to this title").

In any event, even if that heightened standard for standing that the MSBCA applied was applied here, AutoFlex may establish standing by challenging the fairness of the procurement proceedings on multiple grounds that undermine its last-place ranking among the four bidders. Most notably, AutoFlex contends that its ranking was predicated on procurement irregularities ranging from undisclosed criteria, to biased and otherwise erroneous evaluations. These include last-place scores from the Project Contact and DOT Director, whose adjudicated misconduct establishes actual and apparent impropriety that taints their evaluations. Also, AutoFlex was erroneously not credited for having an MFD certification. If AutoFlex is successful in proving its allegations that its rankings resulted from a corrupt or otherwise defective procurement process, and that the school bus electrification contract was awarded to a less qualified or disqualified bidder, then AutoFlex might be able to establish that it would be next in line, as the best qualified remaining bidder.

13

On January 8, 2021, the MSBE recounted, the "Director II Dept. of Material Management" responded to AutoFlex's challenge by identifying specific "factors in the non-award to" AutoFlex:

1.  In your RFP response in section 2.0 Electrification Timeline or Section 5.0 Proposed Turnkey Fleet Implementation Program, of Volume 2, MCPS Fleet Electrification Price List, offered no detail on a proposed roll out plan beyond year one.

2.  The proposed "MCPS Fleet Electrification Price List" does not provide a clear indication of how the pricing structure would be budget neutral over time for MCPS.

3.  The Lion bus is not approved under COMAR and according to results of a recent attempt for state approval, the burden of proving the composite exterior as strong as steel has not been met.

The MSBE next acknowledged that AutoFlex submitted an appeal letter challenging the evaluations and comparisons of its proposal. In response, the Chief of Engagement, Innovation and Operations denied the bid protest, citing the inadequacy of AutoFlex's proposal and stating that its "year one pricing is significantly higher than the selected vendor's pricing[,]" that its "proposal was deficient of many details required in the RFP[,]" and that "[t]he Lion bus proposed by [AutoFlex] is not compliant with COMAR."

When those challenges were unsuccessful, the MSBE found, the MCPS "Superintendent made a formal recommendation to the local board to award the contract to HET." Yet AutoFlex's status as a certified disabled veteran contractor was not

considered by MCPS because its "bid activity report did not indicate that MCPS received any minority bids."

On the merits, the MSBE rejected AutoFlex's challenges to the Contract, concluding as follows:

> *Pricing:* The MSBE held that MCPS reasonably concluded that AutoFlex's "pricing did not meet the requirements of the RFP" because it lacked "pricing for fuel and maintenance costs necessary to demonstrate budget neutrality[.]" In addition "[t]he record does not support" that AutoFlex's pricing was lower than HET's pricing. Specifically, the MSBE concluded that AutoFlex "is mistaken that the contract price awarded to HET is $129,359.65 per bus per year" because even though "[t]he local board resolution awarding the contract to HET is for a period of four years . . . the overall pricing for the cost of 326 buses of $168,684,990.00 is based on Article 4 of the RFP, which states each fleet shall be provided 'for a term of twelve years', which works out to $43,119.88 per year."
>
> *"Technical and Best Qualified":* The MSBE ruled that the Local Board reasonably refused to accept the Lion bus proposal because it is "not currently approved for use in Maryland under existing State Board regulations." Although "[t]he evaluation committee noted [AutoFlex's] experience in general fleet management," it "also noted it had no experience in the management of electric school buses" and "experience is just one of the seven factors . . . used to rank the best qualified responder." MCPS's "evaluation team ranked [AutoFlex] fourth in technical scoring" because it "found numerous deficiencies in the proposal including missing details of . . . no infrastructure plan or bus layout for any of the depots, no discussion of alternate methods of charging, and difficult to understand proposal's budget neutrality based on the submitted pricing plan." The MSBE concluded that MCPS was "not required to seek" technical assistance from the Maryland DOT or Department of the Environment. Nor was the MSBE persuaded by AutoFlex's contention that "MCPS unreasonably interfere[d] with [AutoFlex's] access to the information about electricity usage

15

and charging needs" in a manner that prevented AutoFlex from including pricing and planning details sought by MCPS and provided by its competitor HET.

*"Minority Status"*:  Although the MSBE expressly "recognize[d] that MCPS made an error recording minority bidders on the activity report[,]" it held that "error alone does not equate to a violation of any MCPS's minority business governing policies and procedures resulting in an unfair bid process to" AutoFlex because "[t]here is no evidence in the record that MCPS established a minority business subcontract goal for this contract and the local board policy does not require one."  In the MSBE's view, the state and local regulations requiring an award of points for minority status do not apply to MCPS.  Nor does the RFP require such an award.

*"Favoritism"*:  AutoFlex complained that "its proposal was not ranked properly because the evaluation committee was biased in favor of HET given that one of its suppliers for the proposal includes American Truck & Bus, a supplier of Thomas buses" that "has supplied MCPS with buses for at least the past twelve years."  According to AutoFlex, the "MCPS award to 'HET MCPS LLC' is based on a subcontract to American Bus, the incumbent vendor of the past 12 years[,]" which also is "the only industry member serving on the MVA COMAR school bus advisory committee which has excluded other electric school bus manufacturers [than Thomas Built, including Lion Bus] from consideration as supplier to [MCPS] on the basis that modern, composite materials are not as strong as steel when the U.S. government DOT, and virtually every engineer in the business, recognizes the opposite to be true."

Rejecting AutoFlex's claim "that MCPS was predisposed to use" ATB, the MSBE pointed out that AutoFlex's own proposal included ATB "as a supplier," and that "all bidders were provided with the same information, the same guidance and the same specifications in the RFP."  The MSBE concluded "that all bidders were competing on an equal basis[.]"

*Judicial Review in the Circuit Court*

AutoFlex timely petitioned for judicial review in the Circuit Court for Montgomery County. During that proceeding, AutoFlex asked the court to take judicial notice of recent press reports that MCPS announced it had suspended Mr. Watkins and Mr. Ewald from their positions as DOT Director and Assistant Director, respectively, pending police investigation into financial misconduct involving an unnamed MCPS vendor.

In support, AutoFlex proffered an article published in The Washington Post on November 16, 2021, reporting that "[s]chool officials in Montgomery County said they had placed the transportation department's leaders on leave while the investigation of alleged misconduct is underway" by Montgomery County Police. Donna St. George & Dan Morse, "Police investigating Montgomery County schools' transportation department," WASH. POST (Nov. 16, 2021), https://perma.cc/4VK7-SKD4 (hereinafter, the "Post Article"). According to the Post Article, MCPS's "transportation department oversees a complex operation of more than 1,000 school buses in the sprawling district, which enrolls more than 159,000 students and includes more than 200 schools[,]" and MCPS "recently took steps to move toward electric school buses" and "is supposed to receive 25 electric buses this year, officials said." The Post reported that "Montgomery County police confirmed they were investigating but said they did not have further comment." *Id. See also* Kevin Lewis, "2 MCPS administrators on leave as police investigate 'possible financial improprieties,'" WJLA/ABC (Nov. 16, 2021), https://perma.cc/C3L3-TXGT.

Identifying the two suspended officials as "Todd Watkins, head of the department, who is well-known nationally in school transportation circles, and Charles Ewald, the assistant director[,]" the Post Article reported that "the school system" issued a public statement that, "'We take these allegations very seriously, and as a result, we immediately contacted the police to investigate,'" but would not be "'able to share additional details while the investigation is proceeding.'" *See* Post Article, *supra*. "School system officials said they were committed to 'fully supporting and understanding all aspects of this investigation'" and that "[b]ased on the findings, 'we will determine next steps[.]'" *Id*.

Citing this suspected "criminal activity by these two key officials . . . who oversaw the evaluation and award" of the HET Contract, for "financial improprieties relating to their official duties[,]" as new evidence supporting its complaints that MCPS unfairly favored HET and mistakenly evaluated proposals during the procurement process, AutoFlex asked the circuit court to "reverse or vacate and remand" to the MSBE for "a new competition for the bus electrification program[.]"

When AutoFlex first obtained written DOT evaluations of the four proposals in discovery, names of the four evaluators were redacted. It was not until after the Local Board approved the Contract that AutoFlex succeeded, while in the circuit court, in learning the identity of each evaluator.

In AutoFlex's view, the procurement roles played by these suspended DOT managers warranted the court taking judicial notice of their suspensions and ongoing criminal investigation, then remanding for further administrative inquiry into the nature

18

and relevance of such information on AutoFlex's challenges to the HET Contract. Although counsel for AutoFlex was careful at the hearing to state that he did not yet know whether any crimes had occurred or the identity of the vendor referenced in the investigation, he argued that the appearance of impropriety arising from the suspensions and criminal investigation violated MCPS's own contracting standards.

After the hearing, the circuit court denied AutoFlex's request for judicial notice, ruling that it could not and would not consider anything outside the administrative record reviewed by the Local Board and MSBE. In its written order affirming the MSBE decision, the court rejected AutoFlex's challenges to the Contract based on (1) the appearance of favoritism and other improprieties arising from the suspended DOT officials' involvement in the RFP, evaluation of proposals, and selection of HET as the winning bidder; (2) MCPS's rejection of the electric bus model manufactured by Lion, as a qualified alternative to other models proposed by AutoFlex and another bidder; (3) determinations made by the MCPS, Local Board, and MSBE that AutoFlex's pricing was not competitive; and (4) MCPS's admitted error in omitting AutoFlex's status as a disabled veteran, and the only minority contractor submitting a proposal, from its recommendations to the Local Board. The court affirmed the decision to award the Contract to HET.

*The Ewald Guilty Pleas and Proffer*

After noting this timely appeal challenging both the circuit court's judicial notice ruling and the underlying administrative decision, then filing its brief, AutoFlex filed another request for judicial notice. On June 9, 2023, AutoFlex asked this Court to

19

consider subsequent guilty pleas that Mr. Ewald entered in the Circuit Court for Montgomery County on May 18, as well as the State's written proffer in support of Mr. Ewald's plea agreement. The Local Board opposed the motion on substantive and procedural grounds, asking for an award of attorneys' fees. On June 29, 2023, this Court denied the Local Board's fee request and ruled that AutoFlex's request for judicial notice would be addressed in this opinion.

The Ewald Proffer sets forth the terms of a plea agreement under which Mr. Ewald "plead[ed] guilty to count one alleging a felony theft scheme having a value over $100,000" and "to count two alleging the misdemeanor of misconduct in office" with "[a] judgment of restitution . . . entered as part of the sentence, not merely as a term of probation[,]" based on Mr. Ewald's years-long theft scheme, featuring payments from an "off-the-books" account funded by ATB with reimbursements due to MCPS under its diesel bus contract. Circumventing procurement protocols, Mr. Ewald admitted that he exploited his relationship with ATB and its president, by instructing them to make payments that were due under ATB's diesel bus contract with MCPS directly to him or to a third party, for goods and services that he falsely claimed had been rendered to MCPS. He deposited those misdirected funds into his personal bank account and used them to pay for personal expenses. Mr. Ewald was engaged in this theft scheme throughout the time period he was involved in the procurement for the school bus electrification RFP.

According to the Ewald Proffer:

> *Beginning at least as far back as 2016 and continuing into September 2021, . . . Ewald carried out a scheme to steal money from Montgomery County Public Schools by . . .*

20

*significantly inflating reimbursement requests.* In addition, [Mr. Ewald] used his school system issued purchasing card, known as a P-Card, to make purchases for his personal benefit and not for the benefit of Montgomery County Public Schools (MCPS). Using his position as an employee, [Mr. Ewald] stole over $320,000 from the public school system.

<em>Defendant's Duties with MCPS</em>

*At the time this scheme was uncovered, [Mr. Ewald] was the Assistant Director of Transportation for MCPS. . . . His duties consisted of working with the Director of the Department of Transportation in planning, organizing, and managing the student transportation program that included bus operations,* fleet maintenance, safety and training, information technology, budget, and human resources. He was suspended November 9, 2021, when this scheme came to light and later was terminated from his position. . . .

In his role as supervisor, [Mr. Ewald] participated in budgeting discussions and was *involved in contract negotiations with vendors* to the Department of Transportation. American Truck and Bus [C]ompany (ATB) had been the long-time supplier of Todd Bus school bus vehicles to MCPS. *By 2017, [Mr. Ewald] was in regular contact with Steven Leonard, the President of ATB, regarding changes to options on new buses and delivery schedules under the contract. Because of the relationship he had with ATB in his role as a supervisor, [Mr. Ewald] was able to divert money belonging to the school system.*

(Emphasis added).

The Ewald Proffer details how Mr. Ewald stole money by billing ATB, which made payments to him from an "off-the-books" account tied to the diesel bus program he managed:

<em>Bus Contract between MCPS and American Truck & Bus Inc.</em>

MCPS replaces a portion of its school bus fleet every year. For the contract beginning in 2018, ATB was selected

21

as the contractor. *ATB had been providing buses for many years to MCPS so there is a long history of interactions between MCPS and ATB.* As in past contracts, the 2018 contract contained a provision allowing MCPS to extend the contract for four additional one-year terms. MCPS exercised this option through 2021. The contract provided delivery dates and had a structure for late charges if deliveries were not met. In addition, the contract provided for changes in pricing based on any changes in the options to be included or reductions from manufacturers of the costs to ATB. These provisions had been standard features of MCPS bus contracts for many years.

The contract between MCPS and ATB provided two methods for handling late charges. MCPS could deduct the charges from money due to ATB or MCPS could request a certified check from the vendor payable to the Montgomery County Board of Education. The director of Division Procurement, not staff of the Department of Transportation, was to determine the payment method for late charges. Beginning in 2017, this procedure was not followed.

(Emphasis added).

The Ewald Proffer then explains how Mr. Ewald executed his theft scheme by exploiting his working relationship with ATB, with assistance in avoiding procurement protocols from his supervisor, Mr. Watkins:

*[Mr. Ewald's] Theft of Money through American Truck & Bus Contract*

The Director of the Department of Transportation, Todd Watkins, explained that he arranged with Mr. Leonard, the President of ATB, for ATB to hold onto late fees and change fee reimbursements rather than returning that money to MCPS. *As requested by Mr. Watkins, from 2016 through 2021, ATB did not return any money to MCPS despite several changes and adjustments that resulted in ATB owning [sic] MCPS money. However, ATB did maintain an accounting of funds owed to MCPS in an "off-the-books" system.* ATB kept a spreadsheet of fees due to MCPS and then made deductions to that amount when payments were sent out.

22

Beginning in 2016, [Mr. Ewald] made [a] request to ATB to disburse money from the "off-the-books" account to himself and others. *[Mr. Ewald] conveyed the impression that he had authority from MCPS to direct disbursement of the "off-the-books" funds and ATB relied on that apparent authority in complying with the requests for use of the funds.* In addition to payments to specific individuals, at the request of [Mr. Ewald], ATB paid invoices from third parties for services and work allegedly performed for the Department of Transportation. While occasionally documentation of expenses accompanied the email request for reimbursement from the "off-the-books" account, often no documentation was provided.

*ATB issued checks to individuals totaling $368,585.04 from the "off the books" fund. Of that amount, $352,568.68 was found to have gone into [Mr. Ewald's] personal account* at USAA Bank. [Mr. Ewald] used email to request payments from ATB and sometimes directed that the checks be sent to his home address. . . . *The dollar amount received each year escalates from 2016 through 2020 before dropping in 2021.* The table also shows that the payments to [Mr. Ewald] from the "off-the-book" funds, while somewhat irregular, were spread out over many months of most years. . . .

For some requests, [Mr. Ewald] listed in his email what the "off-the-books" money was allegedly to be a reimbursement for. During this investigation, records were obtained of [Mr. Ewald's] personal debit and credit card purchases. [Mr. Ewald's] personal accounts were searched to try to find expenses of the amount or type described in the emails from [Mr. Ewald] requesting "off-the-books" reimbursement from ATB. Investigators were able to identify at best, only about $28,054.10 that may have been reimbursement of expenses made for the benefit of MCPS.

Below is an example of some of the investigative process. ATB provided an email from [Mr. Ewald] to ATB employee Karen Thiemeyer asking to be reimbursed for docking stations and FASTER training in August 2020. FASTER stands for Faculty and Administrator Safety Training and Emergency Response, a program that provides training in practical responses to violence in schools. There

23

were no invoices or documentation provided to ATB [to] justify the $67,877.25 request for "off-the-books" funds. . . .

The reimbursement check for this request was sent by ATB to [Mr. Ewald's] attention at his work address. As shown in the bank statement image below, [Mr. Ewald] deposited the $67,877.25 check into his personal account . . . on August 31, 2020. . . .

A review of all of [Mr. Ewald's] known bank accounts and credit card expenses found no purchases at all, let alone any close to the $67,000 that [Mr. Ewald] claimed he incurred for the benefit of MCPS for FASTER implementation or Dell computer equipment. However, subsequent bank records show how this money belonging to MCPS went to the personal benefit of [Mr. Ewald]. The bank statement of [Mr. Ewald's] USAA account 7770 for the month after the deposit, September 2020, shows three significant debits. A payment for $8,000 is made to a USAA credit card ending in 9594 and two days later another payment is made to the same credit card in the amount of $1,500. The third debit is for $57,946.89 to a USAA loan ending in 5965. . . .

Following the money further reveals that USAA loan 5965 was taken out by [Mr. Ewald] in November 2019 to purchase a 2018 Lincoln Navigator. . . . The $57,946,89 payment of "off-the-books" MCPS money from ATB paid off this loan in September 2020. Thus, rather than receiving reimbursement for computer equipment or trainings he purchased with his own money for MCPS, [Mr. Ewald] actually got clear title to a $64,000 Lincoln Navigator. . . .

As to the payments to the USAA credit card . . . [i]n August 2020, [Mr. Ewald] made two purchases from Landscape Concepts Inc. . . . totaling $8,094. . . .

While not every check issued by ATB from the "off-the-books" fund can be linked to specific purchases by [Mr. Ewald] for his own benefit, there are several deposits of stolen money that happen close to when significant payments are made by [Mr. Ewald] on his own expenses, such as large credit card bills and payments for his Dodge Viper sports car. Giving [Mr. Ewald] credit for all expenses that arguably

24

could have been for the benefit of MCPS, the evidence still shows [Mr. Ewald] stole $324,514.58 in money owed by ATB that should have [] gone to MCPS by exploiting the "off-the-books" funds.

(Emphasis added).

After detailing Mr. Ewald's abuse of his MCPS-issued purchase card, or P-card, for personal expenses and gift cards, the proffer summarizes his admission of guilt in November 2021, when confronted by his supervisor:

*[Mr. Ewald's] Statements about His Actions*

The Director of the Department of Transportation, Todd Watkins, was made aware that P-Card use in his Department would be audited by the MCPS Internal Audit Unit in the fall of 2021. Mr. Watkins asked [Mr. Ewald] about questionable expenses on [Mr. Ewald's] P-Card. *That conversation took place on November 8, 2021.* During the conversation, [Mr. Ewald] admitted that he had been using the P-Card issued to him to make purchases for his personal benefit. He acknowledged that the purchase of gift cards which had triggered the P-Card audit, was for personal use. *[Mr. Ewald] also told Mr. Watkins that he had been getting money from the "off-the-books" account with ATB for his personal benefit. He admitted that he falsified justifications in the emails to ATB asking for reimbursement checks.* [Mr. Ewald] said he did not know exactly how much he had taken but he thought it was around $200,000.

(Emphasis added).

In addition to making "$463,256 in charges between July 1, 2016, and January 5, 2022[,]" Mr. Ewald "also directed ATB to pay invoices from third parties for services provided to the Department of Transportation" via a method that violated "established MCPS procedures" designed as "checks and verification steps" that "MCPS uses to ensure purchases are legitimate" and "distorted budget projections that would be based on

25

past expenditures to identify areas of need." One example involved a payment for "pole lighting" work, that Mr. Ewald directed ATB to make to the third party contractor.

*The Watkins Guilty Plea and Proffer*

Even more recently, also while this appeal has been pending, former DOT Director Watkins pleaded guilty to one count of misdemeanor misconduct in office, predicated on his failure "to properly manage the contract for the purchases of school buses[,]" which enabled Mr. Ewald "to steal over $320,000" from MCPS, by exploiting his relationship with ATB to misdirect payments made from its off-the-books account. For reasons that we explain below, we will take judicial notice of the adjudicated facts supporting Mr. Watkins' conviction, as set forth in the written proffer supporting his plea agreement. *See* Md. Rule 5-201(c).

As Mr. Ewald's direct supervisor, Mr. Watkins' "duties consisted of planning, organizing, and managing the student transportation program that include bus operations, fleet maintenance," and "budget[.]" Mr. Watkins "delegated some of the [ATB] contract change order discussions to Mr. Ewald," but "was deeply involved in contract negotiations with ATB" and "ultimately responsible for the management of the bus contract." In that capacity, he circumvented the MCPS procurement protocols and terms in the ATB contract by "arrang[ing] with Mr. Steve Leonard, the President of ATB, for ATB to hold onto late fees and change fee reimbursements rather than returning that money to MCPS." It was that deviation from procurement protocols that Mr. Ewald exploited to misdirect payments from ATB's off-the-books account for his personal benefit.

26

The Watkins Proffer includes the same "long history of interactions between MCPS and ATB" involving the school bus fleet described in the Ewald Proffer, pointing to the contract provisions for "late charges if deliveries were not met" and "changes in pricing based on options to be included or reductions from manufacturers of the costs to ATB."  Consistent with the misconduct described in the Ewald Proffer, Mr. Watkins circumvented MCPS's procurement protocols:

> The contract between MCPS and ATB provided two methods for handling late charges.  MCPS could deduct the charges from money due to ATB or *MCPS could request a certified check from the vendor payable to the Montgomery County Board of Education.  The director of the Division of Procurement, not [Mr. Watkins], was to determine the payment method for late charges.  Beginning in 2016, this procedure was not followed.*
>
> In a statement to police investigators, *[Mr. Watkins] explained that he arranged with Mr. Steve Leonard, the President of ATB, for ATB to hold onto late fees and change fee reimbursements rather than returning that money to MCPS.  As requested by [Mr. Watkins], from 2016 through 2021, ATB did not return any money to MCPS despite several changes and adjustments that resulted in ATB [owing] MCPS money.  However, ATB did maintain an accounting of funds owed to MCPS in an "off-the-books" system.*  ATB kept a spreadsheet of fees due to MCPS and then made deductions to that amount when payments were sent out.  [Mr. Watkins] made at least seven requests for ATB to issue him checks from the "off-the-books" account [which] demonstrates his knowledge that MCPS procedures for reimbursement were not being followed.
>
> *Beginning in 2016, . . . [Mr.] Ewald made [a] request to ATB to disburse money from the "off-the-books" account to himself and others.*  In addition to payments to specific individuals, at the request of Mr. Ewald, ATB paid invoices from third parties for services and work allegedly performed for the [DOT].  While occasionally documentation of

27

expenses accompanied the email request for reimbursement from the "off-the-books" account, often no documentation was provided. *ATB issued checks to individuals totaling $368,585.04 from the "off-the-books" fund. Of that amount, $352,568.68 was found to have gone into the personal account of Charles Ewald* at USAA Bank. These payments occurred over a period of years.

*[Mr. Watkins'] choice to set up the "off-the-books" system and his failure to monitor how MCPS funds in that system were used resulted in Mr. Ewald being able to personally enrich himself by stealing money belonging to MCPS.* In his statement to investigators, [Mr. Watkins] acknowledged he knew the "off-the-books" system was not an approved procedure and suggested it was easier to seek forgiveness than ask permission. . . .

By not following established procedures regarding P-Card use and refunds under the bus contract, [Mr. Watkins] avoided all the checks and verification steps MCPS uses to ensure purchases are legitimate. His lack of oversight resulted in distorted budget projections that were based on past expenditures to identify areas of need. As set out above, [Mr. Watkins'] non-feasance allowed a theft of over $320,000 to occur. To his credit, when Mr. Ewald acknowledged the theft scheme, [Mr. Watkins] reported the crime to supervisors and voluntarily cooperated with internal and criminal investigations.

(Emphasis added).

## QUESTIONS PRESENTED

In its briefing to this Court, AutoFlex raises the following questions, the first two of which we have reordered:

1. Was the Circuit Court's refusal to take judicial notice of the facts of the criminal investigation an error of law?

2. Was the MSBE Opinion affirming the award by the MC Local Board and/or MCPS to HET arbitrary and capricious, or otherwise unlawful, because the two key MCPS Department of Transportation

officials who oversaw the evaluation and award were later under criminal investigation in connection with "financial improprieties" relating to their official duties?

3.      Was the MSBE Opinion and award to HET arbitrary and capricious, or otherwise unlawful, because the MC Local Board and MCPS excluded the electric bus manufactured by Lion Electric company, precluding new technology in a twelve-year program, and/or because the evaluations were based on considerations contrary to the RFP, and/or not supported by substantial evidence?

4.      Was the MSBE Opinion and award to HET arbitrary and capricious, or otherwise unlawful, because the MSBE Opinion conclusion on pricing is not supported by substantial evidence?

5.      Was the MSBE Opinion and award to HET arbitrary and capricious, or otherwise unlawful, because the MC Local Board and MCPS disregarded AutoFlex's minority-owned status?

In addition, as noted, AutoFlex asks this Court to take judicial notice that while this appeal was pending, Mr. Ewald pleaded guilty to felony counts of theft scheme and misconduct in office based on the facts set forth in the Ewald Proffer filed in support of those pleas.

In response, the Local Board consolidates and restates AutoFlex's issues as follows:

1. Whether the circuit court erred in refusing to consider allegations and information that came to light after the State Board's decision and are not part of the agency record.

2. Whether the State Board's decision was arbitrary, illegal or capricious, and a reasonable mind, reviewing the relevant evidence in the agency record, could not have reached the decision the State Board reached in upholding the Local Board's award of the contract for RFP 9432.1 to HET and not AutoFlex.

29

The Local Board opposes AutoFlex's request for judicial notice on procedural and substantive grounds that we detail below.

For reasons that follow, we conclude the circuit court erred in denying AutoFlex's request for judicial notice that MCPS suspended Mr. Ewald and Mr. Watkins pending criminal investigation into financial misconduct involving an MCPS vendor on the mistaken ground that the circuit court could not consider material outside the administrative record. Moreover, we will grant AutoFlex's request to take judicial notice of Mr. Ewald's pleas and proffer and take judicial notice on our own initiative of Mr. Watkins' plea and proffer. In turn, the adjudicated facts in the Ewald and Watkins Proffers effectively supersede AutoFlex's request for judicial notice of MCPS's announcement of Mr. Ewald's and Mr. Watkins' suspensions and the related criminal investigation.

We conclude that based on this adjudicated evidence and other undisputed facts, AutoFlex established *prima facie* grounds for the MSBE to reconsider its claims that the procurement proceedings and resulting Contract are tainted by the appearance of impropriety, MCPS's favoritism toward HET, and material mistakes in evaluating bidders' proposals. In accordance with SG § 10-222(h)(1), we will vacate the judgment and remand for further administrative proceedings to determine the significance of such evidence to AutoFlex's challenges to the HET Contract.

## STANDARDS GOVERNING JUDICIAL REVIEW

Appeals from a local board of education to the MSBE may result in reversal and/or remand of a contested case decision that "[m]isconstrues the law," "[r]esults from an unlawful procedure," or "[i]s affected by any other error of law." COMAR 3.A.01.05.06.C. The MSBE "may not substitute its judgment for that of the local board unless the decision is arbitrary, unreasonable, or illegal." *Id*. *See Frederick Classical Charter Sch., Inc. v. Frederick County Bd. of Educ.*, 454 Md. 330, 373 (2017). When the MSBE reviews a local board's decision involving "local polic[ies] or controvers[ies,]" it treats that decision as *prima facie* correct. *See* COMAR 13.A.01.05.06.A.; *see also Frederick Classical Charter Sch.,* 454 Md. at 373.

As the Supreme Court of Maryland has explained, the high level of deference that courts afford to administrative decisions by the MSBE reflects that under § 2-205 of the Education Article,

> the State Board "has very broad statutory authority over the administration of the public school system in this State, and that the totality of its statutory authority constitutes a visitatorial power[4] of such comprehensive character as to invest the State Board with the last word on any matter concerning educational policy or the administration of the system of public education." We have previously explained the scope and purpose of this "visitatorial" power:
>
>> We think it beyond question that the power of visitation vested in the State Board is one of general control and supervision; it authorizes the State Board to superintend the activities of

---

[4] "Visitatorial power" is defined as "[t]he power to inspect or make decisions about an entity's operations." *Visitatorial power,* BLACK'S LAW DICTIONARY (11th ed. 2019).

> the local boards of education to keep them within the legitimate sphere of their operations, and whenever a controversy or dispute arises involving the educational policy or proper administration of the public school system of the State, the State Board's visitatorial power authorizes it to correct all abuses of authority and to nullify all irregular proceedings.
>
> "The broad statutory mandate given to the State Board requires that special deference be given to its interpretation of statutes that it administers." That deference is over and above that generally afforded to other administrative agencies; "while administrative agencies generally may interpret statutes, as well as rule upon other legal issues, and while an agency's interpretation of a statute which it administers is entitled to weight, the paramount role of the State Board of Education in interpreting the public education law sets it apart from most administrative agencies."
>
> However, the discretion that courts afford to the State Board "is not unlimited." We have recognized that there are at least four instances where judicial review may be more expansive in its inquiry:
>
> > (1) the matter involves a purely legal question;
> >
> > (2) the State Board has contravened state statute;
> >
> > (3) the State Board exercised its power in bad faith, fraudulently, or in breach of trust; or
> >
> > (4) the State Board exercised its power arbitrarily or capriciously.

*Frederick Classical Charter Sch.*, 454 Md. at 370-71 (cleaned up). *See Bennett v. Harford County*, 485 Md. 461, 474 (2023).

Under SG § 10-222(h), a court considering a contested administrative case on judicial review may:

> (1) remand the case for further proceedings;

32

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision: . . .

    (iii) results from an unlawful procedure;

    (iv) is affected by any other error of law;

    (v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

    (vi) is arbitrary or capricious.

Appellate courts review a final administrative decision by "looking through" the circuit court's decision on judicial review, to evaluate the agency's decision itself. *See Maryland Dep't of the Env't v. Assateague Coastal Tr.*, 484 Md. 399, 446 (2023); *Montgomery Park, LLC v. Maryland Dep't of Gen. Servs.*, 482 Md. 706, 724 (2023); *Anne Arundel County v. 808 Bestgate Realty, LLC*, 479 Md. 404, 419 (2022). Although "we presume them to be valid[,]" we "review[] conclusions of law *de novo*" without deference. *See Montgomery Park,* 482 Md. at 724; *Frederick Classical Charter Sch.,* 454 Md. at 369. "When reviewing an agency's findings of fact 'we affirm the agency's decision if there is substantial evidence in the record as a whole to support the agency's findings and conclusions.'" *Montgomery Park,* 482 Md. at 724 (citation omitted). For decisions involving a mixed question of law and fact, we also apply the substantial evidence test. *See Charles County Dep't of Soc. Servs. v. Vann*, 382 Md. 286, 296 (2004).

**DISCUSSION**

We first address AutoFlex's judicial notice contentions, concluding that the circuit court erred in denying AutoFlex's request for judicial notice on the ground that it could consider only evidence presented to the MSBE. Ultimately, however, we need not consider the announced suspensions of Mr. Ewald and Mr. Watkins pending criminal investigation because this Court will take judicial notice of superseding adjudicative facts regarding the recent convictions of both Mr. Ewald and Mr. Watkins. From there, we turn our attention to AutoFlex's challenges to the MSBE's decision to affirm the HET Contract, explaining why we are remanding to the MSBE and the Local Board for further administrative proceedings during which AutoFlex's challenges to the procurement proceedings resulting in the HET Contract may be reconsidered in light of Mr. Ewald's and Mr. Watkins' adjudicated misconduct.

## I. JUDICIAL NOTICE

As we have discussed, there are two judicial notice questions before us. First, AutoFlex challenges the circuit court's refusal to take judicial notice of public statements by MCPS, as reported in the Post Article, announcing its suspension and criminal referral of Mr. Ewald and Mr. Watkins. Second, AutoFlex asks this Court to take judicial notice of Mr. Ewald's guilty pleas and supporting proffer.

After reviewing the relevant record and standards governing judicial notice, we explain why the circuit court erred in denying AutoFlex's request for judicial notice and why this Court will take judicial notice of superseding adjudicative facts concerning the recent convictions of both Mr. Ewald and Mr. Watkins.

34

## A. Standards Governing Judicial Notice

Maryland Rule 5-201 governs judicial notice of adjudicative facts, providing in pertinent part:

> (a) *Scope of Rule.* This Rule governs only judicial notice of adjudicative facts. Sections (d), (e), and (g) of this Rule do not apply in the Appellate Court or the Supreme Court.
>
> (b) *Kinds of Facts.* A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
>
> (c) *When Discretionary. A court may take judicial notice, whether requested or not.*
>
> (d) *When Mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information.*
>
> (e) *Opportunity to Be Heard.* Upon timely request, a party is entitled to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. . . .
>
> (f) *Time of Taking Notice. Judicial notice may be taken at any stage of the proceeding.*

(Emphasis added).

We review a circuit court's ruling on a request to take judicial notice under the clearly erroneous standard, keeping in mind "'[t]he principle that there is a legitimate range within which notice may be taken or declined and that there is efficacy in taking it, when appropriate[.]'" *Smith v. Hearst Corp.*, 48 Md. App. 135, 141 (1981) (quoting "Professor James Bradley Thayer in his Preliminary Treatise on Evidence (1898), at p. 300"). *See Choudhry v. Fowlkes*, 243 Md. App. 75, 98 (2019). Circuit and appellate

35

courts may take judicial notice of "matters of common knowledge or [those] capable of certain verification." *Faya v. Almaraz*, 329 Md. 435, 444 (1993) (citations omitted); *Dashiell v. Meeks*, 396 Md. 149, 174-76 (2006).

Maryland Rule 5-201 governs judicial notice of adjudicative facts only. *Dashiell*, 396 Md. at 175. We have distinguished "adjudicative facts" from "legislative facts," defining the former as facts "'about the parties and their activities, businesses and properties. They usually answer the questions of who did what, where, when, how, why, with what motive or intent while legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law and policy and discretion.'" *Dashiell*, 396 Md. at 175 n.6 (quoting *Montgomery County v. Woodward & Lothrop, Inc.*, 280 Md. 686, 711-12 (1977)). Additionally:

> *What unites these various classes of information is* not so much their nature as public or widely-known, but more *their nature as* undisputed—*as one commentator has described it, falling into either the "everybody around here knows that" category, or the "look it up" category.* See Lynn McLain, Maryland Evidence, State & Federal § 201:4(b)-(c), at 221, 237 (3rd ed. 2013). Put another way, "[i]f there is no reason to waste time proving a fact, it can be 'judicially noted.'" Joseph Murphy, Maryland Evidence Handbook § 1000, at 489 (4th ed. 2010).

*Abrishamian v. Washington Med. Grp., P.C.*, 216 Md. App. 386, 414 (2014) (emphasis added).

Information that is commonly subject to judicial notice includes publicly available records, including court documents posted on the Maryland Judiciary's website. *See Est. of Steiner*, 255 Md. App. 275, 285 n.1 (2022); *MCB Woodberry Dev., LLC v. Council of*

36

*Owners of Millrace Condo., Inc.*, 253 Md. App. 279, 302 (2021); *Abrishamian*, 216 Md. App. at 414. We may "take judicial notice of the record" in such cases, even when not included as part of the record on appeal if doing so is necessary "to reach a just result" based on "established and uncontroverted facts not formally of record in the pending litigation." *Fletcher v. Flournoy*, 198 Md. 53, 60-61 (1951) (overruled on other grounds). *See, e.g., Hanover Invs., Inc. v. Volkman*, 455 Md. 1, 9 n.5 (2017) (noting that "although an appellate court does not normally 'travel' outside the record, judicial notice may be taken of filings in related cases in furtherance of a just result"); *Cochran v. Griffith Energy Servs., Inc.*, 426 Md. 134, 145 n.4 (2012) (taking judicial notice on appellate review of the contents of filings in a prior lawsuit, which parties agreed at oral argument were relevant to the appeal, where consideration supported a "just result"); *Abrishamian*, 216 Md. App. at 415-16 (recognizing that "[n]oticing pleadings does *not* mean accepting what they say as true, only that they exist as public records") (emphasis in original); *Lerner v. Lerner Corp.*, 132 Md. App. 32, 41 (2000) (taking judicial notice of an order and notice of judgment entered in the circuit court).

### B. The Parties' Contentions

AutoFlex first contends that "under Rule 5-201(d)," the circuit court's denial of its request for judicial notice that MCPS announced the suspensions of Mr. Ewald and Mr. Watkins and the pending criminal investigation was both "legal error" and "arbitrary[] [and] capricious[.]" In turn, the circuit court erred in affirming MCPS's award of this Contract without considering whether these suspensions and criminal investigation warranted remand for further administrative inquiry into whether MCPS violated its

procurement standards and the RFP, by awarding the Contract under circumstances establishing favoritism, material mistakes in the evaluations, and an appearance of impropriety.

Second, AutoFlex asks this Court to take judicial notice of Mr. Ewald's guilty pleas and the supporting proffer, arguing that these newly adjudicated facts establish even more probative links between the HET Contract and these two DOT officials. Pointing to the key role played by Mr. Ewald throughout the procurement process for the $168 million Contract, AutoFlex contends that although "the facts concerning Watkins and Ewald were not available in AutoFlex's earlier administrative appeals," this Court has authority and good reason to exercise its discretion to take judicial notice of Mr. Ewald's guilty pleas and supporting proffer. Likewise, AutoFlex argues, this Court should take judicial notice of the September 2022 Financial Management Practices Audit Report, which was publicly filed after the circuit court entered judgment, explaining that MCPS planned to modify "its process for purchasing buses, and developing procedures for how it accounts for changes to bus specification[.]" *See* MCPS Financial Mgmt. Practices Audit Report, Sept. 2022, https://perma.cc/GFC2-R5XN.

As we understand it, the Local Board's position is that the circuit court correctly denied AutoFlex's request for judicial notice, because it was both too little, given that the suspensions and investigation of these MCPS officials were merely reported in a newspaper, and too late, because they occurred after the MSBE completed its administrative review of the HET Contract. Moreover, the Local Board argues that AutoFlex is improperly citing to the contents of both the audit report that MCPS issued

38

after the Contract was affirmed and to Mr. Ewald's guilty pleas and supporting proffer filed during this appeal. According to the Local Board, neither the suspensions pending investigation, nor MCPS's audit report, nor the Ewald Proffer should be considered for the following reasons:

1. "AutoFlex did not file a motion asking the circuit court for permission to inject extra-record evidence into the proceedings; it just did so unilaterally despite the restrictions in Rules 7-206 and 7-208" and the circuit court judge's ruling that those rules "prohibit[] this Court from considering extraneous information outside of the record considered by the agency." *See* Md. Rule 7-206(b) (providing that the administrative record consists of transcripts, exhibits, and pleadings "filed in the agency proceeding"); Md. Rule 7-208(c) ("Additional evidence in support of or against the agency's decision is not allowed unless permitted by law."); *Arking v. Montgomery County Planning Bd.*, 215 Md. App. 589 (2013).

2. Neither the proffered November 2021 news reports, nor anything else in the record establishes "that the 'financial improprieties' under investigation had any connection to the contract awarded by the Local Board in April 2021 under the MCPS bus electrification RFP."

3. Because the "alleged events that occurred in November 2021 and unrelated statements in an MCPS audit report, arising months or years after the State Board's record was closed and the agency decided the appeal in July 2021[,]" AutoFlex is asking this Court to improperly "consider, or be influenced by, information about alleged events occurring many months after any of the events or actions in the record considered by the State Board below."

4. The information that AutoFlex asked the circuit court to take judicial notice of was "not the kind of fact contemplated by the rule" governing judicial notice, because "an allegation in news reports published months after the State Board's decision" in July 2021 is neither a matter of common knowledge, capable of certain verification, nor a fact unrelated to a party.

5. "[P]ost facto 'evidence' and other extra-record matters have no place in this appeal" because "'[a] reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action.'" *Arking*, 215 Md. App. at 596 (citation omitted).

39

## C. AutoFlex's Request for Judicial Notice in the Circuit Court

In its written order denying AutoFlex's request for judicial notice of the Post and other news reports, the circuit court ruled that (1) the articles "do not convey 'facts generally known as a result of newspaper article'"; (2) "the existence of an investigation, even if judicially noticed, does not shed light on any factual information that improprieties occurred in this bid"; and (3) even though Mr. Watkins and Mr. Ewald were two of the four evaluators of the proposals for the HET Contract under review, "the record in this case is devoid of facts that would support even the mere appearance of impropriety." We address each alternative rationale for refusing to take judicial notice of the announced suspensions of Mr. Ewald and Mr. Watkins in turn, concluding that neither the law, nor the record supports the reasons cited by the circuit court.

### 1. *Authority to Consider Evidence Not in the Administrative Record*

As a threshold matter, the circuit court erred in predicating its decision not to take judicial notice of the reported suspensions and criminal investigation of Mr. Ewald and Mr. Watkins on its mistaken belief that it lacked authority to consider evidence that was not in the administrative record presented to the Local and State Boards. During the hearing before the circuit court on its request for judicial review, AutoFlex argued that "even where an evidentiary record is otherwise closed and even when a case is on appeal the Court must still take judicial notice" of "certain facts when requested." When AutoFlex's counsel asked the court "to take judicial notice of the facts that were reported in government press releases" about the suspension and investigation of "Mr. Todd

40

Watkins, the head of MCPS's Transportation Department[,]" and Mr. Ewald, the Assistant Director, the circuit court asked whether counsel could cite "any case that has taken judicial notice of a newspaper article about a pending investigation?" Noting that she could "take judicial notice of Court records" and "somebody's conviction if it's in my records[,]" the judge stated that she had not found "a single case where any Court has ever taken judicial notice of an investigation that is pending without resolution. And that somehow becomes incorporated substantively into an administrative record."

Counsel for AutoFlex responded that "it's not just the newspaper articles[;] it's also the statements made by the agencies themselves. So MCPS itself made this press release or otherwise made this statement about the investigation as did the Montgomery County Police Department."

The court next expressed doubt that it could consider new evidence that was not before the Local Board and MSBE, ultimately deciding that it had "an absolute limitation to the record that is before me and to the record that was before the Commission or the agency." The court explained:

> Under what theory and authority do I get to superimpose percolating events hot off the presses into an administrative review? I am not the finder of fact in the first instance. And *so caselaw is abundantly clear that the only thing that I can consider is that which was before the agency whose decision I'm reviewing. And if it was not before them there is plenty of caselaw that says that I am absolutely prohibited from reviewing it. Even [if] I [wish] to there's no discretion. . . .* The [role] that I have is a different one. It is simply as an appella[te] review. So unless you direct me to any case that says that in extenuating circumstances if something is interesting enough I can supplant the state of the law as I know it.

41

(Emphasis added).

In response, counsel for AutoFlex argued that under Md. Rule 7-208(c), providing "that additional evidence in support of or against agency's decision is not allowed unless permitted by law[,]" the judicial notice provisions in Md. Rule 5-201 qualify as "one aspect of law that allows the Court to acknowledge a fact[.]" Counsel then pointed out that "in their response brief the County Board counsel suggested it would be improper" to consider these judicially noticeable facts because AutoFlex was improperly "trying to imply something else such as for example that these individuals are guilty" or "that the investigations are related to something specific such as the bus electrification contract[.]" Reassuring the court that AutoFlex was not doing so, counsel argued that AutoFlex did not "yet know what exactly the investigation is related to[,]" specifically:

> *the facts of the timing[,] nature[,] and targets of the investigation are judicially noticeable facts because under the caselaw they're undisputed and they're generally known.* And the administrative record shows that Mr. Watkins and Mr. Ewald were both evaluators and key supervisors for this procurement. And Mr. Ewald is listed in the RFP as the project contact. But Autoflex is emphasizing instead here that in both caselaw and the school system's own written procurement policies it is the mere appearance . . . of impropriety that is enough to call a procurement process into question and to find potential error that warrants reversal.

> *Here again it is the appearance of impropriety and not any final determination of impropriety that is the concern at the moment. Even the State Board's opinion noted that MCPS's procurement manual was binding and applicable here Your Honor.* And the manual itself explicitly requires that procurement procedures be conducted with the avoidance of even the appearance of impropriety.

42

> While there may or may not be any actual impropriety, that remains to be seen, there is nevertheless this appearance issue and the Court can take judicial notice of the facts cited that give rise to this issue. Furthermore, caselaw has held that where an appearance of impropriety exists a procurement award can be reversed. *It doesn't matter in our view that the administrative proceedings below did not have this information at the time of the agency rulings because of Rule[] 5-201 and the room given in Rule 7-208(c) that allows additional evidence as permitted by law. Now one sensible option for the Court might be to remand the matter to the agency to review or hold in abeyance until these investigations are completed so the agency can reconsider its opinion after it has the results of the investigations.*
>
> *Under the State Government Article Section 10-222(h) again the Court does not have to make any findings under Subsection (h)(3) in order to remand the case.* But regardless of the precise remedy Your Honor the appearance of impropriety here is real. The facts giving rise to it can be judicially noticed at this time and we believe that the issue rises to the level of one that may have prejudiced the substantial right of the petitioner. May have or may not have but the law says the standard is may have and *this alone is enough to make this an issue that warrants at least remand.*

(Emphasis added).

When the review hearing continued on April 15, 2022, counsel for AutoFlex cited a case in which the court "did take judicial notice of the existence of Washington Post newspaper articles in the D.C. area that were covering ongoing criminal investigations of a local public official." *See Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991).

We hold that the circuit court erred as a matter of law in denying AutoFlex's request for judicial notice of the announced suspensions of Mr. Ewald and Mr. Watkins pending criminal investigation on the ground that the court could not consider evidence

outside the administrative record.  Specifically, the court incorrectly ruled that in deciding whether to remand to the MSBE, it lacked authority to consider any evidence that had not been presented during the administrative proceedings before the Local Board and MSBE.

Although Md. Rule 7-206(b) states that an administrative record is limited to evidence and argument made "in the agency proceeding," Md. Rule 7-208(c) contemplates that evidence outside that administrative record may be considered in some cases, expressly stating that "[a]dditional evidence in support of or against the agency's decision is not allowed *unless permitted by law*."  (Emphasis added).  We agree with AutoFlex that the judicial notice provisions in Md. Rule 5-201 give the court authority to grant such permission.  Under that rule, adjudicative facts outside an existing record may be noticed "at any stage of the proceeding" when the "necessary information" is presented to the court.  *See* Md. Rule 5-201(c)-(f).

When reviewing an administrative decision, therefore, a court may exercise its discretion to consider adjudicative facts outside the administrative record.  To be sure, there are important caveats and limitations to considering evidence that was not considered by the agency.  Most importantly, a court conducting judicial review may not usurp the administrative agency's role by re-trying the administrative matter based upon evidence that was not part of the administrative record, but could have been.  In *Arking*, 215 Md. App. at 595, for example, the circuit court did not err in denying a motion by homeowners to supplement the administrative record following administrative approval of a resubdivision plan, with an additional letter plus planning staff reports about

44

previous resubdivision plans, because, by considering "supplemental materials on which

the [ ] Board did not rely, the [circuit c]ourt could not determine whether the [ ] Board's

decision was a reasonable conclusion based upon the facts in the record." (cleaned up).

This Court explained that:

> [i]n judicial review of administrative proceedings, "[a]dditional evidence in support of or against the agency's decision is *not* allowed unless permitted by law." Md. Rule 7-208(d) (emphasis added). It is clear in the instant case that supplementing an administrative record is not permitted by law. Pursuant to the Maryland Administrative Procedure Act, Md. Code (1984, 2009 Repl. Vol.), § 10-222 of the State Government Article ("SG"), a reviewing court may only
>
> (1) remand the case for further proceedings;
>
> (2) affirm the final decision; or
>
> (3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision: . . . .
>
> (v) is unsupported by competent, material, and substantial evidence *in light of the entire record as submitted*; or
>
> (vi) is arbitrary and capricious.
>
> SG § 10-222(h) (emphasis added). It is clear from the above language that we are limited to reviewing "the entire record *as submitted*." SG § 10–222(h)(3)(v) (emphasis added) . . . The underlying rationale for this principle is as follows:
>
> "'A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action.' We do not allow issues to be raised for the first time in actions for judicial review of administrative agency orders entered in contested cases because to do so would allow the court to resolve matters *ab*

45

> *initio* that have been committed to the jurisdiction and
> expertise of the agency."
>
> *Capital Commercial Properties., Inc.*, 158 Md. App. at
> 96-97[] (quoting *Delmarva Power & Light Co. v. Public
> Service Comm'n of Md.*, 370 Md. 1, 32 [] (2002)). Because
> the materials submitted to the circuit court with appellants'
> motion to supplement were not part of the record before the
> Board when it rendered its decision, neither the circuit court
> nor this Court has authority to review them. Therefore, the
> circuit court did not err.

*Id*. at 596-98 (emphasis added).

The Local Board cites *Arking*, 215 Md. App. at 596-97, for the broad proposition

that "the law is clear that post facto 'evidence' and other extra-record matters have no

place in this appeal." Such reliance is misplaced because even though a reviewing

court's authority to *reverse or modify* an agency's decision under SG § 10-222(h)(3)(v)

must be based on the administrative "*record as submitted,*" the statute does not condition

a reviewing court's authority to *remand* for further administrative proceedings under SG

§ 10-222(h)(1) on the administrative record as submitted. (Emphasis added). In this

scenario, when the reviewing court remands after taking judicial notice of evidence not in

the administrative record, the agency still has the "opportunity to consider the matter,

make its ruling, and state the reasons for its action." *Arking,* 215 Md. App. at 596

(citations omitted).

Consequently, a reviewing court does not abuse its discretion in taking judicial

notice, then remanding, when, as in this case, the adjudicative facts concern events that

occurred after the agency issued its decision. In contrast to the supplementary statements

and reports belatedly proffered by the homeowners in *Arking*, which could and should

46

have been presented to the planning board before it approved the challenged resubdivision plan, here, MCPS's public announcement that two key officials in the HET Contract procurement proceedings had been suspended pending criminal investigation into financial misconduct involving an MCPS vendor involved matters that allegedly occurred during the procurement proceedings but that AutoFlex could not reasonably have been expected to know before the MSBE affirmed the Contract.

As the excerpted transcript shows, AutoFlex clearly argued that MCPS's announcement of suspensions pending criminal investigation of two MCPS officials who played key roles in the procurement proceedings through which HET was selected as the winning bidder, constituted grounds for remanding to the MSBE, so that the agency could reopen the record to reconsider AutoFlex's substantive and procedural challenges to the Contract in light of that new evidence. In contrast to the previously available evidence belatedly proffered in *Arking*, here the Ewald and Watkins suspensions constituted new information about new events that had *prima facie* relevance for AutoFlex's request to remand for the MSBE to reconsider its challenges on the ground that MCPS's evaluation of proposals was tainted by favoritism and material mistakes. In this scenario, when the reviewing court remands after taking judicial notice of evidence not in the administrative record, the court is not improperly "usurp[ing] the agency's function" because the agency still has the "opportunity to consider the matter, make its ruling, and state the reasons for its action." *Arking,* 215 Md. App. at 596-97.

In deciding whether to remand to the MSBE, therefore, the circuit court had authority to take judicial notice of evidence outside the administrative record. The court

47

erred in ruling that it did not, applying the wrong legal standard in thinking that it could

not take judicial notice in a judicial review of an administrative proceeding. *See*

*generally Wilson-X v. Dep't of Hum. Res.*, 403 Md. 667, 675-76 (2008) (explaining that

"trial judges do not have discretion to apply inappropriate legal standards, even when

making decisions that are regarded as discretionary in nature"). We next turn to the

circuit court's alternative grounds for denying judicial notice.

### 2. *Facts Generally Known and Relevant to Appearance of Impropriety*

We conclude that the circuit court also erred in ruling that "the articles do not

convey facts generally known" and that the record is "devoid of facts supporting

appearance of impropriety." To the contrary, the factual record supporting AutoFlex's

requests for judicial notice in both the circuit court and this Court is undisputed and

*prima facie* relevant to AutoFlex's challenges based on appearance of impropriety,

favoritism, mistakes in evaluating the proposal, and other possibly pretextual grounds for

awarding the Contract to HET.

Significantly, the Local Board has never denied that MCPS itself made the public

announcement reported by the Washington Post. Nor has the Local Board contested that

these two DOT officials identified by MCPS were suspended and under criminal

investigation for financial misconduct relating to an MCPS vendor. Likewise, it is

undisputed that Mr. Watkins and Mr. Ewald managed MCPS's contracts with its bus

vendors generally and played significant roles in the procurement process for the HET

Contract specifically. Given that the investigation arose from MCPS's own criminal

48

referral regarding financial improprieties within its DOT's dealings with MCPS vendors, and the Local Board presumably could have requested verification of those suspensions from MCPS, we discern no error or unfairness in taking judicial notice of such information.

This information was patently relevant because it provided evidentiary support for AutoFlex's claims of favoritism toward HET and material mistakes in evaluating its proposal. As the Local Board acknowledges, the two senior DOT officials who managed the school bus electrification procurement for MCPS were suspended pending criminal investigation into financial improprieties in their interactions with MCPS's existing bus vendor, whose affiliate submitted the $168 million proposal that those same officials recommended, resulting in MCPS's selection of that affiliate as the winning bidder.

Given the unanswered questions about potentially corrupt connections between those DOT officials and these procurement proceedings, MCPS's announcement was *prima facie* relevant to AutoFlex's challenges. Specifically, as AutoFlex detailed to the circuit court, the suspensions and investigation of Mr. Ewald and Mr. Watkins constituted new evidence that could be pertinent to the MSBE's determinations as to (1) whether (and if so, why) MCPS favored HET in the procurement process; (2) whether (and if so, why) MCPS made material errors in evaluating AutoFlex's proposal, with respect to its inclusion of Lion Bus as a cost-saving alternative, pricing terms, and minority contractor status; and (3) whether MCPS complied with its own regulations prohibiting an appearance of impropriety in contracting.

49

Under Md. Rule 5-201(d), judicial notice is mandatory when a requesting party supplies the court with "the necessary information." In these circumstances, where the announcement to be judicially noticed was not disputed by the Local Board, involving undisputed proprietary information about employment actions by MCPS, which was relevant to AutoFlex's challenges to the HET Contract, the circuit court erred in ruling that the evidence was neither "generally known," nor relevant to the MSBE's review of the Contract for appearance of impropriety.

Given that AutoFlex repeatedly asked the circuit court to exercise its authority to remand for further administrative proceedings in light of such evidence, the decision not to take judicial notice prejudiced AutoFlex. Yet we will not predicate our decision on whether to remand for further administrative proceedings solely on the court's errors in failing to take judicial notice of the suspensions and investigation because, as explained next, we will exercise our discretion to take judicial notice of the subsequent convictions of both Mr. Ewald and Mr. Watkins, as well as the factual proffers supporting those convictions.

### C. Judicial Notice in This Court

#### 1. *Judicial Notice of the Ewald Pleas and Proffer*

After noting this appeal, AutoFlex asked this Court to take judicial notice that on May 18, 2023 Mr. Ewald pleaded guilty to felony theft and to misdemeanor misconduct in office, in accordance with the proffer entered into the record in Circuit Court for Montgomery County Case No. C-15-CR-23-464. AutoFlex made this request for judicial

notice by letter dated June 9, 2023, addressed to the members of this Court and accompanied by the Ewald Proffer.

In support, AutoFlex asserted that "Mr. Ewald's guilty plea is highly relevant to the case at issue" because he "was the Assistant Director of Transportation for MCPS at the time his criminal activities were discovered[,]" played an important role in contract negotiations with school bus vendors, and developed a relationship with ATB and its president that enabled him to "divert money belonging to the school system." Because Mr. Ewald used his DOT position to steal "over $320,000 from the public school system," AutoFlex maintained that this constitutes the type of "extraordinary" facts that warrant judicial notice "in order to reach a just result[.]" *See State v. Williams*, 255 Md. App. 420, 431 (2022).

In opposition, the Local Board moved to strike AutoFlex's request for judicial notice, arguing that it was inappropriately made by letter rather than by motion, that AutoFlex should not have submitted the proffer before obtaining a ruling on its request, and that the request otherwise lacks merit. The Local Board also moved for an award of attorneys' fees under Md. Rule 1-341.

In reply, AutoFlex submitted the affidavit of a paralegal in its counsel's office, recounting contacts with individuals in the Clerk's Office of this Court, which resulted in the decision to file AutoFlex's request for judicial notice by letter, rather than by motion. In AutoFlex's view, the Local Board's argument that these facts should not be judicially noticed because they were not before the Local Board, the MSBE, or the circuit court, "misses the point" because even though the proffer "did not exist at that time, . . . it is

51

precisely the type of court document that is clearly judicially noticeable even on appeal –

not merely some other type of proposed supplement to the record."  In any event,

AutoFlex argues, there is no basis for attorneys' fees under Rule 1-341 given its "good

faith basis for the substance and form of its request for judicial notice[.]"

By order dated June 29, 2023, this Court ruled that we would address AutoFlex's

request for judicial notice in this opinion but otherwise denied the Local Board's fee

request.  We will grant AutoFlex's request for judicial notice of Mr. Ewald's convictions

and supporting proffer.

In our view, the Local Board elevates form over substance when it complains that

AutoFlex was required to file a motion asking this Court to take judicial notice of Mr.

Ewald's guilty plea and the supporting proffer.  Nothing in the rule expressly requires a

motion.  Instead, it merely states that parties may "request[]" judicial notice and that

courts may "take" it, even on their own initiative.  *See* Md. Rule 5-201(c)-(d).  Nor can

the Local Board claim any prejudice here, where it had opportunity to oppose the request,

and did so.  *See* Md. Rule 5-201(e).

The Local Board does not dispute that Mr. Ewald pleaded guilty based on the

proffer filed by the State or that "'[p]ublic records such as court documents' are some of

the most common of the 'types of information [that] can fall under the umbrella of

judicial notice.'"  *In re H.R.*, 238 Md. App. 374, 401-02 (2018) (quoting *Abrishamian*,

216 Md. App. at 413).  Likewise, the Local Board tacitly concedes that the theft scheme

described in the Ewald Proffer, which Mr. Ewald admitted to orchestrating through ATB

after Mr. Watkins enabled him to evade MCPS financial protocols, occurred throughout

the period when Mr. Ewald was acting as the Project Contact for the school bus electrification RFP, and while Mr. Ewald and Mr. Watkins were serving as two of four MCPS evaluators of the proposals submitted by HET, AutoFlex, and two other bidders.

As the Supreme Court of Maryland has explained, courts may "travel outside the record of the case before it in order to take notice of proceedings in another case," by "mak[ing] use of established and uncontroverted facts not formally of record in the pending litigation[,]" "in order to reach a just result[.]" *Dashiell*, 396 Md. at 176 (citations omitted). *Cf., e.g., Cochran, Inc.,* 426 Md. at 145 n.4 ("Both parties acknowledged during oral argument that these pretrial statements bear on the outcome of this case, and we believe that a just result will be best reached by considering them."); *Chesek v. Jones*, 406 Md. 446, 456 n.8 (2008) (taking judicial notice of public records that an appellee included in an appendix to its record extract); *City of Hyattsville v. Prince George's County Council*, 254 Md. App. 1, 68 n.25 (2022) ("In an appendix to its brief, the District Council included copies of various documents related to subsequent decisions by the Planning Board and the District Council. This Court may take judicial notice of the adjudicative facts reflected in those official public documents.") (citation omitted). We will take judicial notice of Mr. Ewald's pleas and proffer in order to reach a just result by remanding to reconsider the Contract challenges.

In this case, Mr. Ewald's guilty pleas and supporting proffer are not disputed. Instead, they are readily confirmed and publicly available on Maryland's electronic courts website (known as MDEC). The description of the theft scheme and misconduct

53

set forth in the Ewald Proffer establishes, *prima facie,* the relevance of these adjudicated facts to AutoFlex's claims of favoritism and flaws in the procurement proceedings.

Now that Mr. Ewald's previously announced suspension and investigation have ripened into convictions supported by a detailed factual proffer that Mr. Ewald admitted to as part of his guilty plea agreement, we will exercise our discretion to grant AutoFlex's request to take judicial notice of Mr. Ewald's guilty pleas and proffer, as facts established by undisputed court records. *See* Md. Rule 5-201, 7-208. Because Mr. Ewald's pleas, convictions, and proffer support AutoFlex's challenges to the Contract on the basis of favoritism, material mistakes in procurement proceedings, and appearance of impropriety, we conclude that a just result will be reached by considering them in determining whether to remand for further administrative proceedings.

### 2. *Judicial Notice of the Watkins Plea and Proffer*

For the same reasons we have taken judicial notice of Mr. Ewald's pleas and proffer, we also exercise our discretion to take notice of the subsequent guilty plea by Mr. Watkins on one misdemeanor count of misconduct in office, as well as his supporting proffer, which were entered by the circuit court on June 30, 2023. Like Mr. Ewald's guilty pleas and proffer, Mr. Watkins' conviction and proffer are undisputed adjudicated facts that are *prima facie* relevant to meaningful review of these procurement proceedings and the resulting Contract.

## II. AUTOFLEX'S CHALLENGES TO THE MSBE DECISION

Because this Court's task is to "look through" the circuit court's decision, to review the administrative decision itself, we next address AutoFlex's challenges to the MSBE's order affirming the MCPS's bus electrification Contract with HET. *See Md. Dep't of the Env't v. Assateague Coastal Tr.*, 484 Md. 399, 446 (2023). AutoFlex argues that the HET Contract "cannot remain in place" because of the "appearance of impropriety" by MCPS DOT officials who served as "the project contact for this RFP" and "the key decisionmaker for the evaluation and award[,]" which "could total $168 million over 12 years, all based on the evaluation by the top MCPS DOT officials who were later suspended and under criminal investigation." In addition to establishing an "appearance of impropriety" in the procurement proceedings for the HET Contract, AutoFlex contends that such evidence supports its prior contentions that:

> [t]he award to HET, and the MSBE Opinion upholding it, are
> . . . arbitrary and capricious, and otherwise unlawful, because
> the MC Local Board and MCPS excluded the electric bus
> manufactured by Lion Electric company; because the MSBE
> Opinion conclusion on pricing is not supported by substantial
> evidence; because the MC Local Board and MCPS
> disregarded AutoFlex's minority-owned status; and because
> the award to HET and MSBE Opinion are not supported by
> substantial evidence.

As we have recounted, while this appeal has been pending, the suspensions and criminal investigation of Mr. Ewald and Mr. Watkins ripened into convictions of these two key MCPS officials, both of whom undisputedly played direct roles in choosing an affiliate of the contractor they were exploiting as the winning bidder on this Contract. Although these convictions occurred after the MSBE reviewed and approved the HET

Contract, the misconduct on which those judgments are predicated was occurring throughout this procurement period, while competing bidders were preparing their proposals, MCPS was evaluating them and selecting HET, and the Local Board and MSBE were agreeing to the Contract.

Because such evidence is *prima facie* relevant to the challenges asserted by AutoFlex, we will vacate the circuit court's judgment and remand to the MSBE with instructions to remand to the Local Board for further administrative proceedings. *See* SG § 10-222(h)(1). The theft scheme detailed in the Ewald and Watkins Proffers establishes grounds for further inquiry into AutoFlex's allegations of favoritism, material mistakes during the procurement proceedings, and apparent impropriety.

Specifically, those proffers revealed that throughout the bidding, evaluation, and selection of HET as the winning bidder, Mr. Ewald and Mr. Watkins had an "off-the-books" relationship with ATB and its president. After Mr. Watkins deliberately circumvented MCPS financial protocols, Mr. Ewald conducted a long-running theft scheme that put money into his personal pockets based on MCPS's business dealings with ATB. Although not yet definitively adjudicated, ATB undisputedly has some affiliation with HET, the bidder that was awarded the Contract.

Acting with deliberate disregard of MCPS procurement rules, these two DOT directors had a surreptitious arrangement that enabled Mr. Ewald to steal money owed to MCPS. In turn, that theft scheme created a strong incentive for Mr. Ewald to use his positions – as Assistant Director of the DOT, Project Contact for this RFP, and one of only four evaluators of the proposals – to favor ATB's affiliate, in order to continue and

56

conceal his crimes. Likewise, the off-the-books account incentivized Mr. Watkins to favor HET in order to continue and conceal his surreptitious scheme to circumvent financial and procurement protocols.

MCPS put both officials in position to influence the procurement proceedings for its bus electrification program. Mr. Ewald was designated the sole Project Contact for the RFP. Mr. Ewald and Mr. Watkins were two of only four officials on whom MCPS relied to evaluate the proposals submitted by HET, AutoFlex, and two other competing bidders.

Such evidence bears on the core credibility and factual disputes central to AutoFlex's challenges to the HET Contract. Patently, the Ewald and Watkins convictions and Proffers could impact a factfinder's view of AutoFlex's claims that MCPS showed favoritism toward HET based on its affiliation with ATB, that it made material mistakes in evaluating competing proposals, and that the Contract is tainted by an appearance of impropriety.

For example, when scoring the HET proposal higher than AutoFlex and two other competitors, did Mr. Ewald or Mr. Watkins factor in their existing off-the-books account with HET's affiliate, ATB? Did Mr. Ewald factor in his theft scheme from that account? Likewise, information relating to the roles played by Mr. Ewald and Mr. Watkins is relevant to AutoFlex's allegations that MCPS made material mistakes in evaluating its proposal, including using unannounced selection criteria, misinterpreting pricing proposals, and misreporting that AutoFlex is not a minority contractor. Specifically:

57

- **Unannounced Selection Criteria/Lion Bus Disapproval.**  AutoFlex contends that MCPS, in violation of its contracting rules, improperly used evaluation criteria that were not included in its RFP or its accompanying responses to prospective bidders' questions, as justification for negatively treating AutoFlex's inclusion of a Lion Bus alternative to Thomas Built buses, which ATB had been supplying in diesel form and HET proposed to continue in electric models.[5]  Did Mr. Ewald, as DOT's Project Contact for the RFP, and/or Mr. Watkins, as DOT Director, manipulate the information that MCPS made available to HET and competing bidders with respect to including Lion Bus models in proposals?

- **Pricing Evaluations.**  AutoFlex asserts that MCPS arbitrarily disapproved its pricing structure, including by penalizing its proposal to "frontload" the delivery schedule for electric buses into the early years of the 12-year contract period, while rewarding HET for proposing to "backload" the delivery of electric buses in later years of the contract period.  Did Mr. Ewald and/or Mr. Watkins improperly skew pricing evaluations in a manner that favored HET's proposal?

- **Minority Contractor Status.**  As MCPS admitted, in its report recommending to the Local Board that the Contract be awarded to HET, it mistakenly stated that none of the bidders was a minority contractor.  As a result, AutoFlex's status as a certified disabled-veteran contractor was not considered.  Was MCPS's failure to report AutoFlex's status as a disabled veteran contractor merely an inadvertent mistake, or instead, omitted to eliminate that advantage over HET's proposal? How would consideration of that status have factored into the evaluations?

Neither this Court, nor the circuit court is the appropriate venue to conduct the proceedings and factfinding necessary to consider these questions about how official misconduct by Mr. Ewald and Mr. Watkins affected these procurement proceedings and

---

[5] According to AutoFlex, the Lion bus model satisfies the applicable Maryland regulations requiring the body to be "made of steel, or some equivalent."  Even though "an MVA advisory committee . . . ha[d] not yet blessed the Lion Bus product," "the hope was that it would eventually be approved" sometime during the projected term of the Contract, given that this model already *had been approved under federal standards*, so that the Lion Bus could meet the requirement that it must comply with Maryland standards in effect "at the time of manufacture."  In support, AutoFlex points to multiple DOT responses published in its "Q&A" with prospective bidders, as examples of statements showing that Lion buses were explicitly discussed without any indication that MCPS would disapprove of including them in a proposal.

the resulting Contract.  Given the central roles that these two DOT managers undisputedly played, we will vacate the circuit court's judgment and remand for further administrative proceedings.  In turn, because the MSBE reviews the Local Board's decision under the *prima facie* correct standard to determine whether that decision was "arbitrary, unreasonable, or illegal" the MSBE must remand to the Local Board for it to consider whether and how misconduct by Mr. Ewald and Mr. Watkins influenced the procurement proceedings and resulting Contract.

## CONCLUSION

The circuit court erred in denying AutoFlex's request for judicial notice of MCPS's announcement that its DOT Director and Assistant Director had been suspended pending criminal investigation of financial improprieties involving an MCPS vendor, in the mistaken belief that the court could not consider evidence outside the administrative record in deciding whether to remand to the MSBE.  This Court will take judicial notice of superseding convictions of those two officials based on the stipulated proffers detailing their official misconduct.

We conclude that the appropriate remedy for the circuit court's error is remanding to the MSBE with instructions to remand to the Local Board for administrative review of the augmented evidentiary record.  Because the misconduct of Mr. Ewald and Mr. Watkins was discovered after the MSBE and the Local Board issued decisions on AutoFlex's challenges, neither the Local Board nor the MSBE has had an opportunity to consider what, if any, significance such evidence has for this procurement, the resulting HET Contract, and AutoFlex's challenges to it.

Consequently, the Contract must be reviewed in light of the adjudicated facts supporting the convictions of these DOT directors who were integrally involved in managing MCPS's bidding process, evaluating responding proposals, and awarding the Contract to an affiliate of the vendor they were exploiting. In particular, the Local Board and the MSBE may consider how these two officials impacted MCPS's award of the Contract to HET, including whether they unfairly manipulated MCPS's procurement proceedings by favoring HET, using undisclosed selection criteria, failing to consider or disclose AutoFlex's status as a disabled veteran contractor, or otherwise asserting pretextual reasons for selecting HET over other bidders. *See* SG § 10-222(h)(1); COMAR 13.A.01.05.06.C. As MCPS acknowledged when publicly announcing the suspensions and investigation of its top two DOT managers, review of such finally-adjudicated facts will help in understanding whether and how their misconduct affected these procurement proceedings and in determining appropriate steps based upon such findings, the terms of the Contract, and applicable law.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY VACATED;**

**CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND TO THE MARYLAND STATE BOARD OF EDUCATION WHICH IS TO REMAND TO THE MONTGOMERY COUNTY BOARD OF EDUCATION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**

60

# APPENDIX

*Timeline for the RFP, Contract, and Review*

The following timeline summarizes the pertinent pleadings and proceedings:

**May 7, 2020:** MCPS issued its Request for Information ("RFI") Number 4916.1, soliciting information from experienced companies about providing "a turnkey bus electrification program and all associated operational infrastructure and requirements, at or near budget neutral to [MCPS] Department of Transportation."

**September 1, 2020:** MCPS issued its Request for Proposal ("RFP") 9462.1, "obtain[ing] responses from responsible companies who have the experience capability and resources necessary to provide a turnkey budget neutral school bus electrification program for Montgomery County Public Schools (MCPS) diesel school bus fleet." The requested program would encompass "all planning, implementation, financing, training, management, and services necessary to convert MCPS's entire existing diesel school bus fleet to electric." Mr. Ewald was identified as the "Project Contact." (Citations to the record omitted).

**September 22, 2020:** MCPS issued a written "Q and A" and Erratum/Addendum #1 with responses to questions raised by companies contemplating bids.

**October 6, 2020:** By this date, four companies had submitted proposals: AutoFlex, HET, AlphaStruxure, and First Student. In its proposal, AutoFlex indicated that it was a Maryland Department of Transportation (MDOT) certified (MBE/DBE # 89-100) minority and disadvantaged business enterprise, Maryland small business reserve (SBR # 017354), and a federal Veterans Affairs (VA) and State of Maryland verified Service-Disabled Veteran Owned Small Business (VSBE # 194849865).

**December 9, 2020:** After an MCPS review committee met and evaluated the proposals, giving each one points for components in an MCPS rubric, MCPS released a pre-award notice that it intended to award the RFP 9462.1 contract to HET. Two of the four MCPS evaluators were Mr. Watkins, DOT Director, and Mr. Ewald, DOT Assistant Director.

**December 14, 2020**: MCPS officials met with AutoFlex, identifying deficiencies in its proposal that affected its evaluation scores, which ranked fourth out of the four bidders. These allegedly included (1) details missing regarding bus parking at schools; (2) missing infrastructure plan and bus layout for depots; (3) missing implementation timeline; (4) difficulty in determining how its pricing proposal would be budget neutral; (5) missing discussion of alternate methods of charging; and (6) inclusion of the Lion bus, which features non-steel components that comply with Federal Motor Vehicle Safety Standards ("FMVSS") but were not authorized in Maryland.

**December 16, 2020:**  AutoFlex filed a written protest of the decision to award the Contract to HET.

**January 8, 2021:**  MCPS denied AutoFlex's protest.

**January 10, 2021:**  AutoFlex appealed the denial of its bid protest to the MCPS Chief of Engagement, Innovation and Operations.

**February 8, 2021:**  AutoFlex's appeal was denied.

**February 23, 2021:**  The MCPS Superintendent formally recommended to the Local Board that the Contract be awarded to HET.  Although AutoFlex is certified as a disabled-veteran contractor, and claimed that MCPS has a published policy establishing a goal of awarding at least 10% of total expenditures to contractors with minority, female, and disabled ownership, when MCPS submitted its standard bid activity report to the Local Board, it mistakenly stated that it received no such bids.

The Local Board approved a resolution to award a four-year contract to HET, with provisions extending to 12 years, for a lifetime cost for 326 electric buses of more than $168 million (the "Contract").

**March 15, 2021:**  AutoFlex filed an appeal with the MSBE.

**July 28, 2021:**  After a hearing, the MSBE denied AutoFlex's appeal.

**August 19, 2021:**  AutoFlex petitioned the Circuit Court for Montgomery County for judicial review of the MSBE decision.

**November 16, 2021:**  The Washington Post reported that "[p]olice are investigating possible financial improprieties in the transportation department of Maryland's largest school system" and a Washington, D.C. area television station reported that two officials had been suspended pending the investigation and that MCPS officials made public statements confirming these facts.  Donna St. George & Dan Morse, "Police investigating Montgomery County schools' transportation department," WASH. POST (Nov. 16, 2021), https://perma.cc/4VK7-SKD4.

**December 22, 2021:**  AutoFlex asked the circuit court to take judicial notice of media reports about the suspension and criminal investigation of the two MCPS DOT managers.  AutoFlex identified the two DOT officials as Mr. Ewald, who served as Assistant Director of the DOT and was identified in the RFP as the Project Contact to whom all bidders should address inquiries, and Mr. Watkins, who supervised Mr. Ewald as Director of MCPS's DOT and played a key role in the award of the Contract.  AutoFlex maintained that under these circumstances and for reasons detailed in their petition, the

Contract with HET should be enjoined and vacated, and the matter remanded for further administrative proceedings.

**March 2, 2022; April 15, 2022:** The circuit court held a hearing on AutoFlex's petition for judicial review of the MSBE Opinion. AutoFlex argued that the evaluations and recommendations made by MCPS to the Local Board were predicated on favoritism toward HET, criteria that were contrary to or not included in the RFP and related communications, a misunderstanding of AutoFlex's pricing proposals, and MCPS's erroneous report that none of the four bidders was a minority or disabled veteran contractor. AutoFlex proffered that Mr. Ewald was the Project Contact for bidders and that Mr. Ewald and Mr. Watkins submitted two of the four DOT evaluations upon which the MCPS Superintendent relied in recommending approval of HET's proposal. Counsel for AutoFlex asked the court to vacate the Contract as approved by the Local Board and MSBE, and to remand to the MSBE for further proceedings based on the newly announced criminal investigations that materially undermined review and decisions by the MCPS, Local Board, and MSBE. The court stated that its review was limited to the administrative record, so that it could not consider evidence that was not presented to the Local Board or MSBE.

**April 28, 2022:** In a written opinion, the circuit court denied AutoFlex's request for judicial notice of the suspensions and criminal investigation, then affirmed the MSBE's decision to approve the Local Board's award of the Contract to HET.

**May 27, 2022:** AutoFlex noted this timely appeal.

**May 18, 2023:** Under the terms of a plea agreement, Mr. Ewald pleaded guilty in the Circuit Court for Montgomery County, Case No. C-15-CR-23-464, to one felony count of theft scheme and two counts of misdemeanor misconduct in office, in accordance with a plea agreement supported by a proffer detailing how Mr. Ewald used his DOT position to misdirect payments from ATB to himself, in violation of MCPS procurement policies.

**June 9, 2023:** After initial briefing, AutoFlex asked this Court, by letter filed in the Clerk's Office, to take judicial notice of Mr. Ewald's guilty pleas and proffer.

**June 16, 2023**: The Local Board filed a Motion to Strike AutoFlex's filing, seeking attorneys' fees under Md. Rule 1-341.

**June 23, 2023:** AutoFlex filed an opposition to that motion, accompanied by an affidavit.

**June 29, 2023:** This Court denied the Local Board's fee request and ordered that AutoFlex's request for judicial notice of Mr. Ewald's guilty pleas and supporting proffer would be addressed in this opinion.

63

**June 30, 2023:**  Consistent with a plea agreement and written Proffer of Proof in Support of Defendant's Plea of Guilty (the "Watkins Proffer") that from "at least 2016 and continuing into September 2021," Mr. Watkins, who had been the "Director of the Montgomery County Public Schools Department of Transportation [since] 2009," "failed to properly manage the contract for the purchases of school buses and the use of purchasing cards in his Department such that Mr. Ewald, the Assistant Director of the Department of Transportation was able to steal over $320,000[,]" Mr. Watkins pleaded guilty in the Circuit Court for Montgomery County, Case No. C-15-CR-23-712, to one misdemeanor count of misconduct in office.

**September 6, 2023:**  Mr. Ewald was sentenced to concurrent terms of five years, suspended, plus five years of supervised probation, and to pay restitution of $74,500, which according to the State's sentencing memo is the balance due to reimburse MCPS, after previous payments made by Mr. Ewald.

**September 27, 2023:**  Mr. Watkins' sentence was suspended pending three years of supervised probation with conditions.